CONSTANTINE KOULEGEORGE, Petitioner-Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Respondents-Appellees.

First District (3rd Division)  No. 1—98—4364

Opinion filed September 29, 2000.

Arnold & Kadjan, of Chicago (L. Steven Platt, of counsel), for appellant.

Bates, Meckler, Bulger & Tilson, of Chicago (J. Stuart Garbutt, of counsel), for appellee Tempel Steel Company.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Karen J. Dimond, Assistant Attorney General, of counsel), for other appellees.

JUSTICE BURKE delivered the opinion of the court:

Petitioner Constantine Koulegeorge appeals from an order of respondent Illinois Human Rights Commission (Commission) dismissing his complaint for age discrimination pursuant to section 2—102(A) of the Illinois Human Rights Act (Act) (775 ILCS 5/2—102(A) (West 1992)), based on the termination of his employment by respondent

Tempel Steel Company (Tempel). On appeal, petitioner contends: (1) that the Commission did not have the statutory authority to enter a "directed finding"[1] dismissing his complaint; (2) he was only required to present "substantial evidence" of discrimination to defeat Tempel's motion for a directed finding; (3) and a directed finding for Tempel was not appropriate because the administrative law judge (ALJ) and the Commission applied the wrong legal standard and ignored or misconstrued certain evidence supporting the allegations of his complaint. For the reasons set forth below, we affirm.

The following facts are based on a stipulation entered into by the parties prior to the hearing before the ALJ and submitted in a "Joint Prehearing Memorandum" (prehearing memorandum). Petitioner was born on July 25, 1939, and he began working for respondent Tempel as an hourly paid press operator in July 1968 at Tempel's motor lamination division in Chicago. Tempel's headquarters were located in Skokie. By 1970, petitioner had been promoted to dispatcher in the plant's production control department. William Schaller and Arthur Homyak were already working in the production control department when petitioner was assigned there. In 1973, petitioner was promoted to a salaried position as the production control staff assistant in the annealing department. By 1987, Schaller was the manager of the production control department, Homyak was the assistant manager, and petitioner continued to serve as the production control staff assistant. Also in 1987, Thomas Klawitter was hired by Tempel as another production control staff assistant. After he had completed his training in the various tasks performed by the production control department, Klawitter was primarily responsible for scheduling Tempel's slitting department. Petitioner was responsible for scheduling of the annealing department.

In March 1990, Tempel underwent a change of administration and began a process of corporate restructuring and review. In April 1990,

---

[1]We initially note that although the parties, the administrative law judge, and the Commission refer to the hearing officer's "Recommended Order and Decision" and the Commission's "Order and Decision" as a "directed finding" or a "directed verdict," these terms are not accurate as a matter of procedure where, as in this case, there is no jury for the hearing officer or Commission to "direct." See *Williams v. Chicago Osteopathic Health Systems*, 274 Ill. App. 3d 1039, 1048, 654 N.E.2d 613 (1995). However, while we use the terms "directed verdict" and "directed finding" in this opinion to refer to the agency's decision because they are used throughout the record and in the parties' appellate briefs, we do not apply the standard of review applicable to a directed finding but, rather, the standard applicable to decisions by an administrative agency, as set forth in this opinion.

following a review of the functions of the production control department, Tempel decided to eliminate both production control staff assistant positions. In 1991, Tempel employed a total of 691 people at its Chicago plant. In April 1991, Tempel laid off 79 hourly employees and 12 of the employees were over the age of 40. Tempel allowed 15 employees to transfer, 3 of whom were over the age of 40. Thomas Setlik, the project manager, had decided as part of the administrative review that began in 1990 to eliminate the two production control positions. Petitioner's position was eliminated, effective January 15, 1992, when he was 52 years old. He was informed of this decision, as directed by Setlik, by Arthur Canning, the corporate director of human resources. Schaller was the immediate supervisor of both petitioner and Klawitter at that time. Schaller was not consulted by Setlik regarding the elimination of positions by Tempel. Klawitter was 49 years old at that time. Petitioner had previously performed the duties performed by Klawitter and had also trained him in these duties.

Klawitter remained working for Tempel until August 28, 1992, because, according to Tempel, the employee who was to assume Klawitter's job duties under the reorganization, Paul Rasborschek, who was age 54 and the manager of the slitting department, was on a disability leave of absence. Setlik also claimed that Klawitter was retained because he had been performing the slitting duties in the slitter department on a day-to-day basis while petitioner had not performed them within the last five years.

Tempel gave petitioner a severance package, which was contrary to its usual policy, which included his full salary and fringe benefit continuation for six months through July 15, 1992, and professional outplacement services at Tempel's expense. He had received a 2% merit raise in January 1991 based on his last performance evaluation before his discharge.

At the hearing on petitioner's complaint, petitioner testified that, beginning in 1990, he began having weekly meetings with Canning. Canning would approach him in the hallway on the day of the meetings and say to him, "Gus [petitioner], are you still here? I am surprised you are still here." These comments started to make petitioner think that "something [was] going to happen to [him]." Petitioner also stated at the hearing that Setlik told him, "Gus, you get paid top dollars, we'll see what we can do about you." Petitioner testified that these instances occurred shortly before he was terminated.

Jacinto Gabriel, who had worked as a dispatcher for Tempel, testified that he noticed from March 1990 through June 1991 that Tempel was "letting older people go" from the work force in the production

control department. He also believed that petitioner was "let go" based on his age because Klawitter was younger than petitioner and had less seniority. He did not know Klawitter's exact age. Gabriel claimed that he did not have any other basis for believing that petitioner was subject to discrimination. Gabriel also believed that he was "let go" because of his age.

Larry McIntyre testified that he worked as a security officer for Tempel from 1979 to 1981 and from 1989 to 1993. He was 55 when he was terminated the second time. McIntyre claimed that the other security officers were also terminated except for the youngest, who was in his mid-40s. He and the other guards began to notice a pattern of terminating older workers. He noticed younger workers replacing older workers in the housekeeping and trucking departments after the new management took control. McIntyre further stated that the guards filed charges against Tempel with the Equal Employment Opportunity Commission (EEOC) which were still pending at the time of the hearing. McIntyre further stated that all of the guards who filed charges with the EEOC were terminated. Only the youngest guard, who was the only guard not to participate in the filing of charges with the EEOC, was not terminated. McIntyre also stated that Tempel claimed that it was "outsourcing" security guard jobs.

Robert Nichols, Tempel's vice president and general manager, testified as an adverse witness at the hearing to the authenticity of a memorandum dated September 7, 1993, indicating that Tempel was aware the guards had gone to the EEOC before they were fired. The memorandum (petitioner's exhibit 10) was an "interoffice correspondence" based on a meeting requested by Victor Toboada, a plant protection officer, regarding "specific events taking place with the other officers." Nichols testified that he decided to terminate the guards to save money by "outsourcing" the guard positions and because of the other matters regarding inappropriate behavior by the guards listed in the memorandum as described by Toboada, such as possession of keys and access to offices, desks, and confidential information concerning pensions, salaries, and profits of the company.

Setlik testified as an adverse witness that when Tempel eliminated the position of a salaried employee, the company would give the employee severance payment rather than transfer and recall rights. He also stated that there were no other positions for petitioner to transfer to at the time his position was eliminated.

At the close of petitioner's case, Tempel moved for a directed finding. On June 11, 1998, the ALJ filed her "Recommended Order and Decision," which stated that petitioner's complaint failed to establish a *prima facie* case of age discrimination and that a directed finding for

Tempel was appropriate. The ALJ, therefore, recommended that petitioner's charge and complaint be dismissed with prejudice. The ALJ's decision stated that petitioner's position, as well as several other positions, in the production control department were eliminated as a result of a review of the functions of that department in April 1990. The decision also stated that the preponderance of the evidence adduced during petitioner's case in chief did not sustain the complaint. The ALJ found that petitioner's testimony, regarding the alleged comments he attributed to Setlik and Canning, was not credible. The ALJ noted that petitioner had admitted in his answers to interrogatories that no comments regarding his age had ever been made to him, and she also noted that neither of the comments was included in petitioner's charge or his complaint. The ALJ further found that, even if petitioner had not fabricated the comments, they were insufficient evidence of age discrimination because he failed to show that Canning had any input into the decision to terminate him and that the parties had stipulated that Tempel had decided to eliminate the production control staff assistant positions as early as April 1990. The ALJ also stated that there were valid "monetary concerns" that may have led to petitioner's termination based on his high salary due to his number of years working for Tempel, as opposed to his age, and that Setlik's comment would have been consistent with this concern.

The ALJ further found that the testimony of Gabriel and McIntyre regarding discrimination by Tempel against defendant and the other "older people" to be speculative and not credible because they could not give specific instances or dates of discrimination. It was undisputed, according to the ALJ, that petitioner was not replaced by a similarly situated younger individual and that any of petitioner's remaining former duties that still existed after the elimination of the position and restructuring were simply absorbed by existing personnel. The ALJ also found that Klawitter was not treated more favorably by Tempel because Tempel made the decision to eliminate Klawitter's position at the same time that it eliminated petitioner's and Klawitter was only able to remain longer with Tempel because Rasborschek, the individual who would have taken over some of Klawitter's duties, had a heart attack and respondent waited for his return before actually eliminating Klawitter's position. The ALJ stated that petitioner did not prove that he had any "bumping" rights to support his argument that he should have been allowed to "bump" Klawitter from the position he held while waiting for Rasborschek's return. The ALJ further found that the evidence indicated that Tempel had a policy of offering substantial severance to laid off workers and petitioner was not, therefore, entitled to an hourly position at the time

of his discharge. The ALJ also stated that there were no other positions available at the time as the evidence showed that Tempel did not begin hiring for "some time" after petitioner's discharge.

On November 10, 1998, the Commission filed a "Notice" which stated that the Commission had "decided to decline to review the Recommended Order and Decision" of the ALJ and that it would become the "Order and Decision" of the Commission. This appeal followed.

We initially address petitioner's argument that our standard of review of the Commission's decision is *de novo*. Petitioner argues that because there is no authority allowing the Commission to enter a directed finding, we must rely on "the most analogous case law" involving summary decisions under the Human Rights Act. Based on this analogy, petitioner maintains that because summary decisions, like a decision for summary judgment under the Illinois Code of Civil Procedure, concern questions of law, our review of the Commission's order and decision should be *de novo*.

Tempel and the Commission argue that because a hearing was held in which testimony and evidence were presented, the decision in this case is not the equivalent of a summary decision addressing questions of law. They maintain that the findings of fact made by the ALJ on their motion for a directed finding must be sustained unless they are against the manifest weight of the evidence.

The findings and conclusions of an administrative agency on questions of fact are held to be *prima facie* true and correct. 735 ILCS 5/3—110 (West 1994). The Commission's factual findings must be affirmed unless a reviewing court concludes that they are against the manifest weight of the evidence. *Raintree Health Care Center v. Illinois Human Rights Comm'n*, 173 Ill. 2d 469, 479, 672 N.E.2d 1136 (1996). Determinations as to the credibility of witnesses and the weight to be given their testimony are reserved for the administrative agency, and it is not this court's function to substitute its judgment on those issues. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88, 606 N.E.2d 1111 (1992).

■ The present case involved findings of fact following petitioner's presentation of evidence in an evidentiary hearing. The ALJ determined from the evidence and the credibility of the witnesses that petitioner had not established a *prima facie* case of discrimination by a preponderance of the evidence. The ALJ did not enter judgment on petitioner's complaint as a matter of law, and petitioner has presented no authority supporting his contention that we should apply the *de novo* standard of review applicable to summary decisions to the decision of the ALJ and Commission in the present case. Accordingly, the

applicable standard of review is whether the factual findings made by the ALJ, and adopted by the Commission, were against the manifest weight of the evidence.

Petitioner next contends that there is no statutory authority for the ALJ to have entered a directed finding before the "close of all proofs." He argues that although the Illinois Administrative Code permits "summary decisions" similar to summary judgment under the Illinois Code of Civil Procedure, there is no corresponding provision in the Administrative Code permitting the ALJ to make a directed finding. Petitioner also maintains that none of the reported cases in which the Commission has decided that it has the "right" to enter a directed finding has ever been reviewed by the Illinois appellate courts.

Tempel argues that it is illogical to require a respondent to present exculpatory evidence when the evidence presented by a petitioner is clearly insufficient to support the allegations of his complaint. Tempel also argues that because the Administrative Code permits an ALJ to render a summary decision without having held any hearing where there is no genuine issue of material fact, the ALJ must necessarily have the power after an evidentiary hearing to dismiss the complaint. The Commission adopts Tempel's argument and further argues that because the ALJ found that petitioner failed to establish a *prima facie* case of age discrimination, it was proper for her to dismiss petitioner's complaint as the remainder of the hearing was unnecessary.

■ The section of the Illinois Administrative Code (Code) applicable to the Commission states, in relevant part:

"a) Subject to the provisions of the Act and of this Part, the [ALJ] shall have full authority to govern the procedure of the hearing and to admit or exclude testimony or other evidence.

b) The [ALJ] shall rule on all proper motions and objections by any party ***." 56 Ill. Adm. Code § 5300.530 (1996).

The Illinois Human Rights Act (Human Rights Act) provides:

"(I) Decision. (1) When all the testimony has been taken, the hearing officer shall determine whether the respondent has engaged in or is engaging in the civil rights violation with respect to the person aggrieved as charged in the complaint. A determination sustaining a complaint shall be based upon a preponderance of the evidence." 775 ILCS 5/8A—102 (West 1996).

Neither party has cited to any authority addressing the issue of whether an ALJ or the Commission may consider and rule on a motion for a directed finding, but we note that a number of reported opinions by the Commission indicate that such motions have been considered in similar cases. See *In re Castle*, Ill. Hum. Rts. Comm'n Rep. 1989CF1815, 1990CA3452, 1991CA3757, 1992CA0318 cons. (June

29, 1995) (sexual discrimination case). Additionally, in the recent case of *Anderson v. Human Rights Comm'n*, 314 Ill. App. 3d 35, 731 N.E.2d 371 (2000), the petitioner appealed the Commission's dismissal of her age discrimination claim pursuant to the respondent's motion for a directed verdict. The Commission's hearing officer found that the petitioner had presented evidence to support the first three elements of her *prima facie* case of age discrimination, but the evidence was insufficient to support the fourth element, which required proof that a similarly situated employee who was not a member of the protected group was not discharged. *Anderson*, 314 Ill. App. 3d at 50. The *Anderson* court reversed the dismissal, finding that the petitioner's evidence was sufficient to satisfy the fourth element of her *prima facie* case because the employee who replaced petitioner was 13 years younger than the petitioner even though the employee's age still placed the employee in the protected group. *Anderson*, 314 Ill. App. 3d at 50-51. Having found that the petitioner established a *prima facie* case by a preponderance of the evidence, the *Anderson* court reversed the "directed finding" and remanded for a continuation of the petitioner's hearing to allow the respondent to rebut the presumption of discrimination. *Anderson*, 314 Ill. App. 3d at 51.

■ Although the authority of the hearing officer and the Commission to enter a directed finding was not directly addressed in *Anderson*, the holding in that case implicitly affirms that a hearing officer may enter a directed finding where the petitioner has not established a *prima facie* case of age discrimination by a preponderance of the evidence. We find here, therefore, that the ALJ properly considered, and possessed the authority to rule on, Tempel's motion for a directed finding. Additionally, although the Code does not specifically mention motions for directed findings in the sections applicable to hearings before the Commission, the Code does give the ALJ authority to govern the procedure of the hearing, to control the admission of testimony and other evidence, and to rule on proper motions and objections. The Code specifically provides procedures related to summary findings, but there is no indication in any of the applicable sections of the Code that procedures not specifically mentioned are prohibited. The term "proper motions" is not defined, and we find that a motion for a directed finding is appropriate in a hearing before the Commission, especially in light of the initial burden of proof that a petitioner must satisfy in order to shift the burden of proof to the respondent. It would be unnecessary to require a respondent to present testimony or other evidence where a petitioner has clearly failed to meet its initial burden of establishing a *prima facie* case, as more fully discussed below regarding the *"McDonnell Douglas-Burdine* standard."

■ Petitioner next contends that even if the ALJ had the authority to consider and enter a directed finding, the ALJ erred by applying the wrong standard of proof. Petitioner argues that the Human Rights Act only requires that he establish a *prima facie* case by presenting "substantial evidence" of discrimination rather than by a "preponderance of the evidence" standard applied by the ALJ. He further argues that his evidence satisfied the "substantial evidence" standard because he presented more than a scintilla of evidence of age discrimination. Tempel and the Commission contend that section 8A—102 of the Human Rights Act, applicable to hearings before the Commission, provides that petitioner has the burden of presenting evidence to sustain the allegations of the complaint by a preponderance of the evidence and that the ALJ, therefore, applied the correct standard.

As stated above, and as Tempel and the Commission correctly argue, section 8A—102 of the Human Rights Act requires that "[a] determination sustaining a complaint shall be based upon a preponderance of the evidence." 775 ILCS 5/8A—102(I)(1) (West 1996). See *Anderson*, 314 Ill. App. 3d at 50-51 (stating that a petitioner is required to establish a *prima facie* case of age discrimination by a preponderance of the evidence). The ALJ clearly applied the correct standard in considering the evidence presented by petitioner. As indicated by Tempel and the Commission, the statute and authority petitioner cites in support of his argument apply to reports created by the Department of Human Rights after it has investigated a charge of discrimination. More specifically, after a charge of discrimination has been filed, the director of the Department of Human Rights (Department) is required to determine from the Department's report whether there is "substantial evidence" that a civil rights violation has been committed before taking further action on the charge. This "substantial evidence" has no bearing on the standard applied at the subsequent public hearing before the Commission and, therefore, we find that the ALJ applied the appropriate standard under the statute.

Petitioner next contends that a directed verdict for Tempel was not appropriate because the ALJ applied the wrong "legal standard." Petitioner argues that the *"McDonnell Douglas-Burdine"* standard is no longer followed and that employees may prove their cases with circumstantial evidence as outlined in *Troupe v. May Department Stores Co.*, 20 F.3d 734 (7th Cir. 1994). Petitioner also argues that the evidence of "systemic disparate treatment" by Tempel that he presented at the hearing was sufficient to prove the age discrimination against himself and that both the ALJ and Commission ignored the "systemic evidence of discrimination." Some of the "systemic evidence" that petitioner claims he produced at the hearing includes:

"— that as early as 1991, Tempel started targeting older workers for termination and unfavorable treatment

— that in 1991, shortly after new management came onto the scene, there were two dispatchers working in the production control department, one age 49, the other age 34 and the 49-year-old (Gabriel) was transferred to a heavy labor job he was not qualified for and couldn't do, while the 34-year-old was allowed to remain in his position

— that the security guards started noticing at the same time that a lot of the older workers were being let go or being fired, so much so, that all but one of them became fearful of their jobs and went to the EEOC to inquire as to their rights"

Petitioner further argues this evidence was sufficient to defeat Tempel's motion for a directed verdict even though some of the evidence was in the form of "subjective belief evidence" and "lay witness opinion testimony." He claims that the comments made by Canning and Setlik were also "probative" of the discrimination against himself and ignored by the ALJ and Commission. Petitioner further contends that even though the comments made by Setlik and Canning did not specifically refer to his age, as he admitted in his interrogatory answers, the comments were "relevant and probative in light of all the other evidence produced in this case." Lastly, petitioner claims that the ALJ and Commission failed to "properly apply the case law in the RIF [reduction-in-force] area" and failed to focus on the appropriate factors.

Temple and the Commission contend that the stipulations entered into by the parties and contained in the prehearing memorandum and the undisputed evidence presented at the hearing support the decision of the ALJ that petitioner failed to establish his claims by a preponderance of the evidence. They also argue that the ALJ properly found that the testimony of Gabriel and McIntyre was speculative and did not support petitioner's claims of discriminatory treatment of others or petitioner by Tempel. Tempel and the Commission further argue that Setlik's and Canning's statements to petitioner did not constitute evidence of discrimination as the statements were not related to his age, and the ALJ correctly viewed petitioner's testimony regarding these statements suspiciously based upon petitioner's admission in an interrogatory answer that he could not recall comments made to him regarding his age while employed by Tempel. Tempel and the Commission also argue, assuming *arguendo*, that petitioner's evidence was sufficient to establish a *prima facie* case by a preponderance of the evidence, petitioner could not overcome Tempel's legitimate reasons for his termination as stated at the hearing.

■ Since an administrative agency is a creature of statute, any

power or authority claimed by the agency must find its source within the provisions of the statute by which it is created. *Granite City Division of National Steel Co. v. Illinois Pollution Control Board*, 155 Ill. 2d 149, 171, 613 N.E.2d 719 (1993). Our supreme court has stated that, in analyzing employment discrimination cases under the Human Rights Act, Illinois has adopted the "analytical framework" set forth by the United States Supreme Court decisions addressing claims brought under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.* (1982)) and the Age Discrimination in Employment Act (29 U.S.C. § 621 *et seq.* (1982)). *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178, 545 N.E.2d 684 (1989).

■■ ■ The Seventh Circuit Court of Appeals has recognized that intentional discrimination can be shown by one of two methods: (1) direct evidence or (2) indirect evidence. The analytical framework for proof of intentional discrimination through indirect evidence established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), and adopted by the Illinois Supreme Court in *Zaderaka*, involves a three-part analysis. First, the plaintiff must establish by a preponderance of the evidence a *prima facie* case of unlawful discrimination. If a *prima facie* case is established, a rebuttable presumption arises that the employer unlawfully discriminated against the employee. The employer must articulate, but not prove, a legitimate, nondiscriminatory reason for its decision to rebut the presumption. The petitioner must then prove by a preponderance of the evidence that the employer's articulated reason was merely a pretext for unlawful discrimination. *Zaderaka*, 131 Ill. App. 3d at 179. A *prima facie* case for unlawful age discrimination is established by showing by a preponderance of the evidence that: (1) the complainant is a member of a protected class (age 40 or over); (2) the complainant was doing the job well enough to meet his employer's legitimate expectations; (3) he was discharged or demoted; and (4) similarly situated younger employees were treated materially better. *Illinois J. Livingston Co. v. Human Rights Comm'n*, 302 Ill. App. 3d 141, 152-53, 794 N.E.2d 797 (1998).

■ Intentional discrimination may also be shown by direct evidence pursuant to *Troupe v. May Department Stores Co.*, 20 F.3d 734 (7th Cir. 1994). Under this approach, a petitioner may establish his case with either direct or circumstantial evidence. *Troupe*, 20 F.3d at 735-36. The *Troupe* court recognized three types of circumstantial evidence that a petitioner could utilize to satisfy his burden of proof: (1) evidence of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of

discriminatory intent might be drawn"; (2) evidence "whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic *** on which an employer is forbidden to base a difference in treatment received systematically better treatment"; and (3) evidence "the [petitioner] was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination." *Troupe*, 20 F.3d at 736.

■ We initially disagree with petitioner's argument that the Commission erred in applying the *"McDonnell Douglas-Burdine"* standard because the "standard no longer applies in light of *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 513, 125 L. Ed. 2d 407, 113 S. Ct. 2742, 2749 (1993)." Petitioner does not explain in his appellate brief how the holding in *Hicks* made the standard established in *McDonnell Douglas* no longer applicable to age discrimination cases. Our review of *Hicks* does not reveal that the *McDonnell Douglas* standard was overturned or amended by the Supreme Court in that case. In fact, recent Illinois decisions have continued to apply *McDonnell Douglas* in age discrimination cases. See *Illinois J. Livingston Co.*, 302 Ill. App. 3d at 152.

■ Applying the *McDonnell* standard to the facts here, contrary to petitioner's argument, we find that the ALJ's decision, adopted by the Commission, was not against the manifest weight of the evidence. The ALJ heard testimony from petitioner, his former coworkers Gabriel and McIntyre, and Setlik as an adverse witness. The record supports the ALJ's finding that petitioner did not establish a *prima facie* case of age discrimination by a preponderance of the evidence. Although petitioner testified that the comments of Canning and Setlik made him suspicious of Tempel's motives in eliminating his position, neither comment, as admitted by petitioner in his answers to discovery, made a specific reference to his age. The stipulations and testimony demonstrated that Tempel, in reviewing the procedures of some of its departments, began a process of eliminating a number of positions and jobs in 1991. The stipulated statistics showed that the majority of hourly employees laid off were under the age of 40 and that, of the smaller group of employees who were allowed to transfer to different positions, many of these employees were over the age of 40. Although petitioner was not offered a new position, the testimony petitioner presented showed that Tempel had a policy of giving former salaried employees such as petitioner severance packages rather than transferring them or giving them recall rights. The evidence also showed that Klawitter, who had held a position similar to petitioner's, was allowed

to continue working for Tempel for several more months to allow another worker, who was to assume the responsibilities of the job, time to recover from a heart attack. Moreover, any preference this might have proved was not significant evidence because Klawitter was also over 40 and only three years younger than petitioner. Klawitter's position was also eliminated at the same time as petitioner's and his employment eventually terminated as well. Petitioner's and Klawitter's job responsibilities were assumed by other workers.

The ALJ also considered the testimony of Gabriel and McIntyre regarding other alleged acts of age discrimination against truck drivers, security officers, and other employees by Tempel. The ALJ, however, found this testimony to be speculative because Gabriel and McIntyre could not provide specific facts to support their opinions. The determination of the credibility of witnesses and the weight to be given their testimony are reserved for the administrative agency and it is not this court's function to substitute its judgment on these issues. Based on the evidence presented by petitioner, we find that the ALJ's and Commission's decision that petitioner's evidence did not establish a *prima facie* case of discrimination by a preponderance of the evidence was not against the manifest weight of the evidence.

▮ We next address petitioner's contention that he presented sufficient evidence of direct discrimination through circumstantial evidence as discussed in *Troupe*. As we noted above, petitioner has argued that the hearing officer and Commission "misconstrued [his] evidence of systemic age discrimination," citing numerous examples in his brief. Petitioner also claims that the "statistical evidence," which we have also referred to above, also supports his argument that Tempel's actions resulted in "disparate treatment" of older workers.

Illinois has adopted the "analytical framework" set forth by the United States Supreme Court in decisions addressing claims brought under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act (ADEA). *Zaderaka*, 131 Ill. 2d at 178. "In a disparate treatment case, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 123 L. Ed. 2d 338, 346, 113 S. Ct. 1701, 1706 (1993). "When the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears." (Emphasis omitted.) *Hazen Paper*, 507 U.S. at 611, 123 L. Ed. 2d at 347, 113, S. Ct. at 1706.

Based on the evidence presented at petitioner's hearing, as we stated above, there was evidence in the record to support the hearing officer's and the Commission's decision that age was not a motivating

factor in the termination of petitioner or the other employees at Tempel. Tempel had recently come under new management and the new managers initiated a reorganization of the company. Temple did not replace petitioner with a younger employee; Temple decided to completely eliminate petitioner's position and a comparable position held by Klawitter. There was also evidence presented that other employees, such as the security guards, were terminated in an effort to "out source" those positions and because the security officers had been involved in inappropriate behavior such as possessing unauthorized access to company records. Additionally, the statistics presented by petitioner here were insufficient to show through circumstantial evidence that Tempel's motivation in terminating petitioner was related to his age. The record supported the hearing officer's decision that petitioner failed to present evidence of a younger employee, *similarly situated* to petitioner, who received better treatment.

■ We also reject petitioner's argument that the hearing officer and Commission ignored or misconstrued the testimony of the witnesses, including his own. Petitioner's arguments are merely a request for us to reweigh the evidence he presented and evaluate the credibility of the witnesses. This function, however, is within the province of the ALJ and the Commission. The record indicates that the ALJ made findings of fact based on the stipulations and testimony presented and judged the credibility of the witnesses. The hearing officer did not give great weight to the testimony of the other witnesses presented by petitioner, describing disparate treatment of older employees at Tempel, because the testimony was not based on specific factual instances. Based on this record, we find therefore that the ALJ's and Commission's decisions were not against the manifest weight of the evidence.

We briefly note that petitioner's reliance on *Hansard v. Pepsi-Cola Metropolitan Bottling Co.*, 865 F.2d 1461 (5th Cir. 1989), in support of his argument that beliefs and opinions based on the perception of a witness are admissible, is misplaced. In *Hansard*, the Fifth Circuit Court of Appeals determined that an employee of the defendant employer could testify regarding his opinion that the plaintiff was terminated as part of a "youth movement" by the defendant because the employee's testimony was based on his experience with the company rather than hearsay. *Hansard*, 865 F.2d at 1465. In the present case, however, no issue was raised by the parties here regarding the admissibility of statements or testimony as in *Hansard*. Moreover, the ALJ did admit the testimony and opinions of petitioner's former coworkers, Gabriel and McIntyre. The ALJ, in fact, allowed McIntyre to testify after denying Tempel's motion *in limine* seeking to exclude

his testimony. The ALJ simply did not give great weight to this testimony because it was speculative and unsupported by other facts.

Petitioner's reliance on *Hybert v. Hearst Corp.*, 900 F.2d 1050 (7th Cir. 1990), is also misplaced. In *Hybert*, the court affirmed the district court's admission of statements made by an employee supervisor to the effect that people in their 60s "are going to be replaced." *Hybert*, 900 F.2d at 1050. The *Hybert* court found that the statements were an admission by an agent, the supervisor, of the employer and not hearsay and, therefore, admissible at trial. *Hybert*, 900 F.2d at 1053. Again, in the present case, the testimony of petitioner's witnesses was admitted and no issues were raised regarding the exclusion of certain statements or evidence.

Similarly, petitioner's claim that the hearing officer and Commission ignored evidence of "ageist stereotypes" engaged in by Tempel managers is not supported by the record. Petitioner relies on the comments of Setlik and Canning to support this argument. As we noted, however, these comments were not age related, and we find that they do not support petitioner's claims that they also raise an inference of age discrimination. See *Huff v. UARCO, Inc.*, 925 F. Supp. 550, 555-56 (N.D. Ill. 1996).

Lastly, we briefly address petitioner's claim that even if the reduction in force performed by Tempel was "legitimate," Tempel may still be "challenged on its failure to provide [petitioner] an opportunity to consider or be considered for other positions within the company." The record here contains evidence that salaried employees, such as petitioner, were typically not given the opportunity to transfer to another position and were instead given a severance package and benefits. Petitioner failed to present any evidence that Tempel's failure to offer him an opportunity to transfer was the result of age discrimination. The ALJ's and Commission's decision, therefore, was not against the manifest weight of the evidence.

For the reasons stated, we affirm the decision of the Commission.

Affirmed.

HALL, P.J., and WOLFSON, J., concur.