2020 IL App (1st) 181965-U
No. 1-18-1965
March 16, 2020

FIRST DIVISION

**NOTICE**: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THEODORE KOLIN and MARK STEINHAGEN, | ) ) ) | Petition for Review of the Order of the Illinois Human Rights Commission. |
| Petitioners-Appellants, | ) ) | |
| v. | ) ) | No. 13 CA 0044 |
| | ) | 13 CA 0045 |
| TOWN OF CICERO, ILLINOIS HUMAN RIGHTS COMMISSION and ILLINOIS DEPARTMENT OF HUMAN RIGHTS, | ) ) ) ) | The Honorable Lester G. Bovia, Jr., |
| Respondents-Appellees. | ) | Judge, Presiding. |

JUSTICE WALKER delivered the judgment of the court.
Presiding Justice Griffin and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1     *Held:* We affirm the decision of the Illinois Human Rights Commission. The Commission applied the appropriate standard when it evaluated Petitioners' claims of age discrimination, and its findings of fact were not or against the manifest weight of the evidence. The Commission's ruling that Kolin did not establish a *prima facie* case of age discrimination was not clearly erroneous or against the manifest weight of the evidence. The Commission did not error in finding that Respondent articulated legitimate, non-discriminatory reasons for the adverse employment actions and that Respondent's proffered reasons for its actions were not pretextual because the Commission's rulings were not clearly erroneous or against the manifest weight of the evidence.

¶ 2    Theodore Kolin (Kolin) and Mark Steinhagen (Steinhagen) (collectively, petitioners) brought this action for direct administrative review of the Illinois Human Rights Commission's decision that the Town of Cicero (respondent) did not engage in age discrimination when Petitioners faced adverse employment actions following accusations of sexual harassment from a fellow employee. Petitioners argued that because younger employees also accused of harassment were not disciplined this was evidence of age discrimination and respondent's justification for the disparate treatment was merely pretext. For the following reasons, we affirm.

¶ 3                    BACKGROUND

¶ 4    At the time of their resignations, Kolin (age 60) and Steinhagen (age 56) were employed by respondent as assistant fire marshals in the Cicero Fire Department (CFD). Kolin and Steinhagen worked for CFD for 34 and 26 years, respectively. Assistant fire marshals are at-will employees serving at the pleasure of the Town President. The Town of Cicero Board of Trustees (Board) reappoints assistant fire marshals annually, based on the town president's recommendation. Petitioners consistently received favorable performance reviews.

¶ 5    In February 2010, Isabella Del Gadillo (Del Gadillo), a receptionist at CFD headquarters, brought allegations of sexual harassment against multiple CFD employees. She did not initially identify the alleged perpetrators. Del Gadillo first named Kolin in May 2010. She later named Steinhagen in October 2010. Additionally, Del Gadillo accused lieutenants Frank Rand (age 45), Theodore Peszynski (age 46) and Chad Harvey (age 38) of harassment.

¶ 6    Del Gadillo alleged that Kolin asked her to meet him upstairs, presumably in some type of living quarters, to "tuck" him into bed. She also alleged that Kolin told her to wear sexy jeans while doing so. Steinhagen allegedly brought a women's clothing magazine to work, showed it to

Del Gadillo, and told her that she would look good in some of the outfits depicted in the magazines. Steinhagen also allegedly grabbed her thigh near her buttocks and kissed her on the lips without her consent.

¶ 7      Rand allegedly called Del Gadillo a "rat" for making allegations against firemen and greeted her daily with "Hi, stupid." Peszynski allegedly sang songs at the headquarters with lyrics containing the words "bitches" and "whores." Finally, Harvey allegedly made references to "rats" and to possible visits from Internal Affairs investigators.

¶ 8      Del Gadillo was placed on medical leave on October 18, 2010. Respondent's medical leave policy required Del Gadillo to provide a doctor's note releasing her back to work before she would be permitted to return to CFD headquarters. Del Gadillo never returned from medical leave.

¶ 9      In late October 2010, petitioners were transferred out of the CFD headquarters and prohibited from returning or contacting Del Gadillo. Petitioners spent their workdays with no meaningful work. None of the other CFD employees were transferred as a result of the accusations. Respondent explained that petitioners were transferred because they believed that Del Gadillo may have returned if they were not present at the headquarters. Additionally, respondent believed that the allegations against petitioners were more serious because they involved sexual and physical harassment as opposed to verbal harassment.

¶ 10     Respondent conducted a formal investigation into all of the allegations of harassment made by Del Gadillo. The investigation concluded in June 2011 and all allegations were found to be "not sustained." At the conclusion of the investigation, petitioners requested to return to CFD headquarters, but were denied.

¶ 11    On October 17, 2011, Del Gadillo filed a lawsuit in federal district court against respondent and petitioners. Her complaint did not name Rand, Peszynski or Harvey as defendants. Respondent appointed counsel for Petitioners and paid the costs of their defense.

¶ 12    In 2012, Town President Larry Dominick (President Dominick) discussed petitioners' employment with members of the Board before the annual vote on their reappointment. Some board members were upset by Del Gadillo's federal lawsuit. President Dominick believed that board members would have objected to their continued employment at CFD, so he declined to recommend their reappointment. This effectively terminated petitioners.

¶ 13    Kolin resigned on May 11, 2012. Steinhagen was told that his position was being eliminated, so he resigned on June 1, 2012, and was eventually replaced by Dominck Buscemi, a younger employee.

¶ 14    On December 17, 2013, the Illinois Department of Human Rights (Department) filed separate complaints of age discrimination against respondent on behalf of petitioners with the Illinois Human Rights Commission (Commission). The Commission later consolidated the complaints, and both petitioners and respondent filed cross-motions for summary decisions before Administrative Law Judge Lester G. Bovia, Jr. (ALJ).  The ALJ denied both motions for summary decision.

¶ 15    An administrative hearing was held at the Commission on October 13-15, 2015, and January 12, 2016, before the ALJ. On February 14, 2017, the ALJ issued his Recommended Order and Decision, dismissing the complaints and underlying charges of discrimination with prejudice. The ALJ found that Kolin did not establish a *prima facie* case of age discrimination. The ALJ

found that Steinhagen established a *prima facie* case of age discrimination, but respondent offered legitimate and nondiscriminatory reasons for its actions that were not pretextual.

¶ 16    Petitioners filed a petition for review with the Commission. On August 13, 2018, the Commission affirmed and adopted the ALJ's February 14, 2017 order. Petitioners timely filed a petition for review pursuant to Illinois Supreme Court Rule 335.

¶ 17                                   ANALYSIS

¶ 18    On appeal, petitioners raise three issues for review: (1) whether the Commission erred in finding that Kolin did not establish a *prima facie* case of age discrimination, (2) whether Respondent provided legitimate, non-discriminatory reasons for Petitioners' adverse employment actions that were not pretextual, and (3) whether the Commission applied the correct legal standard in evaluating the age discrimination claims. We will address each issue in turn.

¶ 19                              Standard of Review

¶ 20    Petitioners argue that issues in this case involve a mixed question of fact and law, and we should apply the clearly erroneous standard. Respondent argues that this case concerns the Commission's factual findings, and we should apply the manifest weight of the evidence standard.

¶ 21    When reviewing a decision of an administrative agency, there are three types of questions a court may encounter: questions of fact, questions of law, and mixed questions of fact and law. *Cinkus v. Village of Stickney Municipal Officer Electoral Bd.*, 228 Ill. 2d 200, 210 (2008). Our supreme court has repeatedly acknowledged the wisdom of judicial deference to an agency's experience and expertise. *AFM Messenger Service, Inc. v. Department of Employment Security,* 198 Ill.2d 380, 395-96 (2001).  Therefore, in examining an agency's factual findings, a reviewing court does not substitute its judgment for that of the agency. *Id*. The agency's findings of fact are

held to be *prima facie* true and correct. 735 ILCS 5/3-110 (West 2016). Those factual findings should be sustained unless the reviewing court determines that they are against the manifest weight of the evidence. *Koulegeorge v. Illinois Human Rights Comm'n*, 316 Ill. App. 3d 1079,1087 (2000). Factual findings are against the manifest weight of evidence where the opposite conclusion is clearly evident. *City of Belvidere v. Illinois State Labor Relations Bd.*, 181 Ill. 2d 191, 205 (1998).

¶ 22    In contrast, an agency's decision on a question of law is entitled to no deference and is reviewed *de novo*. *Cook County Sheriff's Office v. Cook County Comm'n on Human Rights*, 2016 IL App (1st) 150718, ¶ 28.

¶ 23    Finally, when there are mixed questions of fact and law, the reviewing court applies a clearly erroneous standard of review. *AFM Messenger Service, Inc.*, 198 Ill.2d at 392. In mixed questions of fact and law, the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory requirement. *American Federation of State, County and Mun. Employees, Council 31 v. State Labor Relations Bd.*, 216 Ill. 2d 569, 577 (2005). Under the clearly erroneous standard, the reviewing court will reverse when it has a "definite and firm conviction that a mistake has been committed."*Beggs v. Board of Education of Murphysboro County, Unit School Dist. No. 186*, 2016 IL 120236, ¶ 50, (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948)).

¶ 24    Here, Petitioners maintain that the determination of whether a *prima facie* case has been established is a mixed question of fact and law. Petitioners argue that the *prima facie* determination is whether a statutory requirement is being satisfied by the facts. We note that there has been some confusion as to whether the finding of a *prima facie* case is a matter of fact or a question of law.

*Gafford v. General Elec. Co.,* 997 F.2d 150, 169 n.10 (C.A.6 1993). We find that the Commission's findings of fact are reviewed under the manifest weight of evidence standard. However, for the ultimate question of whether a *prima facie* case is established, the clearly erroneous standard of review applies. *Heabler v. Ill. Dep't of Fin. & Prof'l Regulation*, 2013 IL App (1st) 111968, ¶ 17

¶ 25                                      Kolin's *Prima Facie* Case

¶ 26    To establish a *prima facie* case of age discrimination, petitioner must show that: (1) he was at least 40 years old at the time of the adverse job action; (2) his job performance met his employer's legitimate expectations; (3) he suffered an adverse job action despite his job performance; and (4) a similarly situated, younger employee did not face the same adverse job action. *Marinelli v. Human Rights Comm'n*, 262 Ill. App. 3d 247, 253 (1994). The Commission found that Kolin met the first three elements, but failed to show that Rand, Peszynski and Harvey were similarly situated employees. Kolin argues the Commission's finding is clearly erroneous and against the manifest weight of evidence.

¶ 27    To determine whether employees were similarly situated, courts must focus on the similarity of misconduct and the employees' work records. *Loyola University of Chicago v. Human Rights Comm'n*, 149 Ill. App. 3d 8, 19 (1986). While precise equivalence is not required, the other employee's circumstances must be sufficiently parallel. *Id*. Indeed, comparators must be directly comparable in all material respects. *Barbera v. Pearson Educ, Inc.,* 906 F.3d 621, 629 (7th Cir. 2018).

¶ 28    Here, the Commission distinguished between the employees by rank and alleged conduct. The Commission found that Kolin was not similarly situated with the comparators Rand, Peszynski, and Harvey because during the relevant timeframe, the comparators had a lower rank

than Kolin. Kolin was an assistant fire marshal and the comparators were all lieutenants. However, Kolin contends that because lieutenant is a leadership position within the CFD, the difference in rank between lieutenant and assistant fire marshal is insignificant.

¶ 29    The Commission also found the alleged conduct by Kolin and his comparators differed in severity. The allegations against the comparators were essentially of using rude and disrespectful language. Rand and Harvey allegedly called Del Gadillo a "rat." Rand also allegedly greeted her daily with "Hi, stupid." Peszynski allegedly sang songs with profane language. In contrast, Kolin was accused of sexual harassment. Kolin allegedly told Del Gadillo to wear sexy jeans and "tuck" him into bed. Unlike his comparators, Kolin was also named in a federal lawsuit for his alleged harassment. The allegations against Kolin were more serious and distinguishable from his comparators'. The Commission found that Rand, Peszynski and Harvey were not similarly situated employees, and the Commission's finding was not against the manifest weight of the evidence.

¶ 30    Since Kolin could not prove that similarly situated, younger employees received favorable treatment, the Commission ruled he failed to establish a *prima facie* case of age discrimination. We find that Commission's ruling was not clearly erroneous.

¶ 31                    Respondent's Reasons for Adverse Actions

¶ 32    Steinhagen contends that the Commission erred in finding that Respondent articulated legitimate, nondiscriminatory reasons for its actions that were not pretextual.

¶ 33    The Commission found that Steinhagen established a *prima facie* case of age discrimination. Steinhagen made the same arguments as Kolin concerning Rand, Peszynski, and Harvey being similarly situated, and the Commission again rejected these arguments. The rank of Rand, Peszynski, and Harvey was lower than Steinhagen's, and the allegations against them were

less severe. However, unlike Kolin, Steinhagen established that Respondent replaced him with a younger employee following his resignation. This replacement was enough to satisfy element four and establish a *prima face* case of age discrimination.

¶ 34    Once a *prima facie* case is established, a rebuttable presumption arises that the employer unlawfully discriminated against the petitioner. *Zaderaka*, 131 Ill. 2d at 179. To rebut this presumption, the employer must articulate, though not prove, a legitimate and nondiscriminatory reason for its action. *Id*. If an employer articulates a legitimate and nondiscriminatory reason, the petitioner must prove, by a preponderance of the evidence, that the employer's reason was untrue and merely a pretext for discrimination. *Id*.

¶ 35    Here, Respondent asserted that it transferred Steinhagen from CFD headquarters to create a work environment in which Del Gadillo could feel comfortable, safe, and free of sexual harassment. Additionally, Respondent asserted that Steinhagen was not reappointed to his position because he was named in Del Gadillo's federal sexual harassment lawsuit. Due to this lawsuit, President Dominick did not nominate Steinhagen for reappointment because of possible resistance from the Board. The Commission found these reasons were legitimate and nondiscriminatory, and we find that the Commission did not error because its decision was not clearly erroneous or against the manifest weight of the evidence.

¶ 36    Steinhagen argues that the Respondent's reasons were pretextual. To prove pretext, a petitioner must show that the employer's reason was false, and that discrimination was the real reason for the action. *Sola v. Human Rights Comm'n*, 316 Ill. App. 3d 528, 537 (2000). A petitioner must present "sufficient evidence to permit a finding that the employer's proffered reasons masked intentional discrimination rather than some other legitimate, though not necessarily commendable,

9

motive." *Christ Hospital and Medical Center v. Illinois Human Rights Comm'n*, 293 Ill. App. 3d 105, 111 (1997). Specifically, a petitioner has to show: "(1) that the articulated reason has no basis in fact; (2) that the articulated reason did not actually motivate the employer's decision; or (3) that the articulated reason was insufficient to motivate the employer's decision." *Sola*, 316 Ill. App. 3d at 537.

¶ 37    For pretext, Steinhagen argues that Respondent was not concerned with Del Gadillo's welfare because it waited eight months to transfer Petitioners from the headquarters. While it is true that Del Gadillo first made allegations of harassment against CFD employees in February 2010, she did not initially identify the alleged perpetrators. Del Gadillo did not name Kolin until May 2010. When she finally named Steinhagen in October 2010, he was transferred, along with Kolin, out of CFD headquarters. Steinhagen then argues that Respondent should have transferred all the accused harassers. However, as previously stated, the allegations against Petitioners were more serious than those against Rand, Peszynski and Harvey.

¶ 38    Steinhagen next argues that Respondent should have allowed Petitioners to return to CFD headquarters at the conclusion of the investigation. In June 2011, Respondent concluded its investigation of alleged harassment and all allegations were deemed "not sustained." However, "not sustained" means there was insufficient evidence to prove or disprove the allegations. Respondent believed that Del Gadillo was credible but lacked the evidence to prove her allegations. The determination of "not sustained" is not the same as finding that the allegation is false. See *Cox v. Murphy,* 2016 WL 4009978 at 30. Additionally, Respondent asserted that Del Gadillo could have returned from medical leave at any time, and Respondent did not want the difficulty of transferring Petitioners upon her return. The Commission found that Respondent was

concerned with bringing Del Gadillo back to a safe and comfortable workplace. We find that the Commission did not error because its decision was not clearly erroneous or against the manifest weight of the evidence.

¶ 39    Steinhagen then argues that Respondent offered contradictory reasons for its failure to reappoint him. He argues that he was initially told that his position would be eliminated, but was later informed that he was not reappointed. Inconsistencies given by an employer as to the reason for termination may tend to establish that the reason was pretextual. *Southern Illinois Clinic, Ltd. v. Human Rights Comm'n*, 274 Ill. App. 3d 840, 850 (1995). However, the reason for Steinhagen not being reappointed was not an inconsistency. Respondent provided evidence that while Buscemi retained Steinhagen's job title, his responsibilities were different following a CFD reorganization. Buscemi's job was essentially a different position.

¶ 40    Prior to Del Gadillo's allegations, Steinhagen never alleged any instances of age discrimination by Respondent. In fact, he enjoyed a long and distinguished career at the CFD, experiencing multiple promotions. His most recent promotion occurred in January 2010 when he was *first* appointed Assistant Fire Marshal at the age of 54. In October 2010, after Steinhagen was informed of the allegations, he offered President Dominick his resignation. President Dominick, however, refused to accept the resignation and encouraged Steinhagen to fight the allegations. In 2011, at age 55, Steinhagen was reappointed Assistant Fire Marshal. Later that year, Del Gadillo filed her federal lawsuit naming Steinhagen among the defendants. In 2012, President Dominick did not nominate Steinhagen for reappointment because some board members were opposed due to the federal lawsuit. Despite these facts, Steinhagen contends that the only obvious explanation for his lack of reappointment was age discrimination, but the evidence does not suggest intentional

discrimination. If Respondent had a discriminatory intent, Steinhagen would not have been appointed as Assistant Fire Marshal at age 54 and then reappointed at 55. Likewise, it strains credulity for President Dominick to refuse his resignation if the goal was to get rid of him. Here, Steinhagen is arguing that Respondent suddenly became discriminatory (between 2011 and early 2012) and that the federal lawsuit (filed in late 2011) played no role in the decision to not reappoint. The Commission's decision finding the Respondent's reason was legitimate and not pretextual was not clearly erroneous and not against the manifest weight of the evidence.

¶ 41                                    Legal Standard for Discrimination

¶ 42    Finally, Petitioners contend that the Commission applied a legal standard that conflicts with *Ortiz v. Werner Enterprises, Inc*., 834 F.3d 760 (7th Cir. 2016) and reversal is required. Specifically, Petitioners argue that because the Commission applied the "direct" and "indirect" methods of showing discrimination, the Commission failed to evaluate the evidence as a whole and resolve the question of, "whether the evidence would permit a reasonable fact finder to conclude that the [Petitioners'] age caused their discharge and other adverse employment actions." Id at 765.

¶ 43    Whether the Commission applied the correct legal standard is a question of law that is reviewed *de novo*. *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 327 Ill. App. 3d 768, 775 (2002). The Illinois Supreme Court has adopted the framework set forth in United States Supreme Court cases addressing issues under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. *Zaderaka,* 131 Ill. 2d at 178. Petitioners may prove discrimination in one of two ways: they may meet their burden by presenting direct evidence that age factored into the employment decision, or they may use the indirect method to prove

discrimination. *Lalvani v. Illinois Human Rights* Comm'n, 324 Illl. App. 3d 774, 790 (2001). The indirect method provides that once the Petitioners establish a *prima facie* case of unlawful discrimination, the burden of production shifts to the Respondent to articulate a legitimate, nondiscriminatory reason the employment action. *Zaderaka*, 131 Ill. 2d 172, 178-179 (1989). See also, *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

¶ 44    Direct evidence of age discrimination would be evidence that an employer made specific comments about an employee's age before an adverse employment action. *Illinois J. Livingston Co. v. Illinois Human Rights Comm'n*, 302 Ill. App.3 d 141, 152 (1998). Such evidence is usually unavailable, so courts allow petitioners to use indirect evidence to sustain a case of intentional discrimination. *Sola*, 316 Ill. App. 3d at 536. Illinois courts utilize the test in *McDonell Douglas* to determine a *prima facie* case that creates the presumption of discrimination. *Id*.

¶ 45    In *Ortiz*, an employee claimed that his employer terminated him because of his Mexican ancestry. *Id*. at 761. He offered both direct and indirect evidence of discrimination, but the federal district court granted summary judgment to the employer. *Id.* at 763. The federal district court held that the employee failed to create a "convincing mosaic" under either the direct or indirect method. *Id.*  On appeal, the U.S. Court of Appeal for the 7th Circuit held that the federal district court erred because it failed to "aggregate the possibilities to find an overall likelihood of discrimination." *Id*. Additionally, the 7th Circuit held that "convincing mosaic" is not a legal standard. *Id* at 765. The proper legal standard is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id*. at 765. *Ortiz* holds that "[e]vidence must be considered as

13

a whole, rather than asking whether any particular piece of evidence proves the case by itself – or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Id*.

¶ 46    Petitioners contend that because the Commission mentioned "direct" and "indirect" evidence in its opinion, the Commission violated the holding in *Ortiz*. We find *Ortiz* does not hold that courts can never identify evidence as either direct or indirect, but instead *Ortiz* holds that courts must view all evidence, both direct and indirect. In fact, the *Ortiz* court specifically held that its decision did not affect the *McDonnell Douglas* burden-shifting framework, which is employed with the indirect method. *Id*. at 766.

¶ 47    Here, Petitioners provided no instances of direct evidence of discrimination. The Commission acknowledged the lack of direct evidence and then applied the *McDonnell Douglas* test to the indirect evidence. *Ortiz* states, "all evidence belongs in a single pile and must be evaluated as a whole." *Id*. Here, the indirect evidence was the only evidence provided, and that evidence was the single pile. Simply mentioning that there is no direct evidence of age discrimination does not violate *Ortiz*.  Hence, we find that the Commission applied the correct legal standard to Petitioners' claims.

¶ 48                                  CONCLUSION

¶ 49    The Commission applied the appropriate standard when it evaluated Petitioners' claims of age discrimination, and its finding that Kolin failed to establish a *prima facie* case of age discrimination was not clearly erroneous or against the manifest weight of the evidence.  The Commission did not error in finding that Respondent articulated legitimate, non-discriminatory reasons for the adverse employment actions and that Respondent's proffered reasons for its actions

were not pretextual because the Commission's rulings were not clearly erroneous or against the manifest weight of the evidence.

¶ 50    Affirmed.