# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 02-2869

JOSE GARCIA,

*Plaintiff-Appellant,*

v.

VILLAGE OF MOUNT PROSPECT, MOUNT PROSPECT
POLICE PENSION BOARD, and GEORGE STEINER,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 2557—**Elaine E. Bucklo**, *Judge.*

———————

ARGUED SEPTEMBER 25, 2003—DECIDED February 23, 2004

———————

Before CUDAHY, RIPPLE, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.*

## I. History

Jose Garcia, an Hispanic, was a police officer for the
Village of Mount Prospect, Illinois from January 1984 until
April 1998. During his tenure as a police officer, Garcia
contributed to the Village's pension fund. This fund had
been established, along with the Mount Prospect Police

Pension Board,[1] by the Village under article 3 of the Illinois Pension Code, 40 Ill. Comp. Stat. 5/1-101 (1998). On April 13, 1998, Garcia suffered a heart attack, leaving him totally and permanently disabled, unable to perform his duties as a police officer. Consequently, on or about June 20, 1998, Garcia applied to the Board for duty-related disability benefits equal to sixty-five percent of his total salary. At the time of his application and during its pendency, Sergeant George Steiner was a member of the Board.

Prior to his heart attack and disability application, Garcia had been a deposition witness in the case of *Martinez v. Village of Mount Prospect*, 92 F. Supp. 2d 780 (N.D. Ill. 2000). In *Martinez*, an Hispanic former police trainee accused the Village Police Department of national origin employment discrimination. (R. 20-1 Ex. E.) On September 30, 1997, counsel for Martinez deposed Garcia at length about various discriminatory practices engaged in by the Village Police Department's command ranks, including Steiner. In January 1998, Garcia's deposition was used by Martinez in responding to the Village's ultimately unsuccessful motion for summary judgment.[2]

---

[1] The Board is comprised of five (5) people: two Village Board of Trustees presidential appointees; two elected from active Fund participants; and one elected by and from the Fund beneficiaries. 40 Ill. Comp. Stat. 5/3-128 (1998).

[2] On January 19, 2000, the district court entered judgment in that case after the jury returned a verdict in favor of Martinez in the amount of $1,179,000. Although Garcia was disclosed as a witness in the Final Pretrial Order, nothing in the record indicates that Garcia himself or his deposition were actually used by Martinez at trial. The presiding judge, Ruben Castillo, was so disturbed by evidence of the Village Police Department's racial profiling policies presented during the trial, that, after the verdict was entered, he sent a letter to the Department of Justice urging
(continued...)

Following Garcia's June 20, 1998 duty-related disability pension application, the Board selected three physicians to examine Garcia to determine if he was disabled. 40 Ill. Comp. Stat. 5/3-115 (1998). At an April 19, 1999 hearing, the Board reviewed the physicians' initial reports and other evidence submitted by both parties (i.e., Garcia's pension benefit application, the initial physical examination of Garcia). While clear that Garcia was disabled, whether the disability occurred in the line of duty remained uncertain. Thus, the Board awarded Garcia non-duty-related disability benefits equal to fifty percent of his total salary. The hearing was continued in order to later consider whether the duty-related benefits were warranted.

Hearings were held on May 12, 1999, and December 22, 1999, where additional evidence was submitted, including: Garcia's own testimony, supplemental medical reports from the Board-selected physicians, medical records from three Garcia-selected physicians, depositions of the Board-selected physicians, and miscellaneous employment records. At no time during any of the three hearings were any claims of employment discrimination made to the Board. After the December 22 hearing concluded, the Board met in a closed session and voted to deny Garcia's duty-related benefits, but to continue the non-duty-related benefits. A written Decision and Order to that effect was issued by the Board on February 14, 2000.

---

[2] (...continued)
an independent investigation of the Village. (R. 20.) Following the verdict and with the prospect of an appeal looming, the parties settled, with the approval of the district court. 92 F. Supp. 2d at 785.

On March 15, 2000, Garcia filed a timely[3] complaint for administrative review in the Circuit Court of Cook County, seeking reversal of his denial of duty-related pension benefits. In his state-court complaint, Garcia alleged only that the decision "[was] against the manifest weight of the evidence and . . . [was] arbitrary and capricious." (R. 20-2 Ex. G-1.) Both Garcia and the Village filed briefs addressing that issue. Nowhere in Garcia's initial July 21, 2000 brief or September 15, 2000 reply brief was there any mention of illegal employment discrimination generally or as a factor in the Board's decision. Nor did the Village make any reference to such claims in its response brief of August 22, 2000. On October 24, 2000, the state-court judge heard oral argument, set forth her reasoning on the record, and affirmed the Board's decision by written order.[4]

During the pendency of Garcia's ultimately unsuccessful administrative appeal, on September 15, 2000, he filed Title VII charges with the Equal Employment Opportunity Commission ("EEOC"). (R. 20-1 Ex. A.) He alleged that

---

[3] A complaint requesting review of a final administrative decision must be filed within thirty-five days of the service of such a decision upon the affected party. 735 Ill. Comp. Stat. 5/3-103 (1998).

[4] Although no transcript of the October 24 hearing is included in the appellate record, it is safe to assume that because neither Garcia nor the Board briefed whether discriminatory animus based upon race or national origin infected the Board's decision, Judge Bush did not consider the issue. Furthermore, the circuit court, sitting in an administrative review capacity, cannot consider any evidence outside the administrative record. 735 Ill. Comp. Stat. 5/3-110 (1998). Hence, any employment discrimination arguments requiring evidence outside the record (i.e., Garcia's deposition testimony in the *Martinez* case) and offered exclusively to challenge the Board's decision during an administrative review would necessarily fail. Regardless, whether Garcia made any such arguments to the circuit court has no impact on the outcome of this case. *See infra* Part II.B.

when the Board denied him duty-related disability pension benefits, the Village and the Board engaged in unlawful retaliation for his *Martinez*-related testimony and unlawful employment discrimination based upon race and national origin. (R. 20-1 Ex. A.) The EEOC dismissed Garcia's charge and issued a right-to-sue letter on January 11, 2001. Thus, on April 11, 2001, Garcia filed a complaint in the Northern District of Illinois against the Village, the Board, and George Steiner in his individual and official capacities. In the complaint, Garcia alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e17 (2001), 42 U.S.C. §§ 1981 and 1983, and sought declaratory and injunctive relief and damages. Motions for summary judgment based upon res judicata were filed by the Village and the Board under Federal Rule of Civil Procedure 56(b). But on May 21, 2002, District Court Judge Elaine Bucklo *sua sponte* raised the issue of subject-matter jurisdiction and dismissed the action under the *Rooker-Feldman* doctrine, *see Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). She also dismissed the summary-judgment motions as moot. This appeal followed. For the following reasons we affirm the district court's dismissal, but on res judicata, rather than *Rooker-Feldman*, grounds.[5]

---

[5] Generally, we have held that for the *Rooker-Feldman* doctrine to apply, the complained-of injury must have been caused by the state-court judgment itself. *See Rizzo v. Sheahan*, 266 F.3d 705, 714 (7th Cir. 2001), *Durgins v. City of E. St. Louis*, 272 F.3d 841, 844 (7th Cir. 2001); *Garry v. Geils*, 82 F.3d 1362, 1366 (7th Cir. 1996); *but see Manley v. City of Chicago*, 236 F.3d 392, 397 (7th Cir. 2001). Garcia's injury was not caused by the state-court judgment and hence, it might be said that the doctrine does not apply. But given the complexities of the doctrine, we refrain from determining definitively whether *Rooker-Feldman* does or does not apply. Rather, we affirm the district court's dismissal solely on res judicata grounds.

## II.  Analysis

In *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481 (1982), the Supreme Court held that full faith and credit, 28 U.S.C. § 1738, applies to state-court judgments entered in proceedings to review a state administrative agency. *But cf. Univ. of Tenn. v. Elliott*, 478 U.S. 788, 796 (1986) (holding that full faith and credit is inapplicable to endow *unreviewed* administrative proceedings preclusive effect in Title VII cases). A judgment of a state court sitting in an administrative review capacity will have preclusive effect on claims and issues brought in subsequent lawsuits according to the law of the state where the judgment was rendered.[6] 456 U.S. at 481-82. But a federal court can deny preclusion if the state-court proceedings denied the parties a full and fair opportunity to litigate by falling below the minimum requirements of due process. *Id.* at 481-82; *see* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 4471.3 (2002).

In the instant case, the Village, Board, and Steiner urge that the Illinois circuit court's administrative review of the Board's denial of duty-related benefits has a res judicata effect on Garcia's federal civil-rights claims. Our analysis, based upon *Kremer*, 456 U.S. at 481-82, has two prongs.

---

[6]  In this opinion, we equate "res judicata" with "claim preclusion," which refers to " 'the preclusive effect of a judgment in foreclosing litigation of matters that were or could have been raised in an earlier suit.' " *Welch v. Johnson*, 907 F.2d 714, 718 n.2 (7th Cir. 1990) (quoting *LaSalle Nat'l Bank of Chicago v. County of DuPage*, 856 F.2d 925, 930 n.2 (7th Cir. 1988)). This understanding of res judicata is distinguishable from "collateral estoppel" or "issue preclusion," which refers to the preclusive "effect of a judgment in foreclosing relitigation in a subsequent action of an issue of law or fact that has actually been litigated and decided in the initial action." *Id.* We consider only the application of res judicata, and not collateral estoppel, in the instant case.

First, we will assess the applicability of res judicata under Illinois law. Second, we will review Garcia's opportunity to fully and fairly litigate his civil-rights claims.

## A.  Illinois res judicata law

Under Illinois law, in order for res judicata to apply to Garcia's current civil-rights claims, the circuit court's previous affirmance of the Board's decision must: (1) have reached a final judgment on the merits; (2) involve the same parties or their privies as the current claims; and (3) constitute the same cause of action as the current claims. *Pirela v. Vill. of N. Aurora*, 935 F.2d 909, 911 (7th Cir. 1991) (citations omitted); *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998). Here, only the second two elements are at issue.

## 1.  Same parties

Garcia was the plaintiff in both the circuit court administrative appeal and in this case. Therefore, the second element of res judicata is easily met with respect to Garcia. There are three defendants in this case: the Board, the Village, and Steiner, in his individual and official capacities. Only the Board was a named party in Garcia's administrative appeal to the circuit court. Hence, the second element of res judicata is clearly met with respect to the Board. We must then consider whether the Village and Steiner are in privity with the Board.

Garcia offered no authority in his initial brief to this court for his assertion that neither the Village nor Steiner would be in privity with the Board. In his reply brief, Garcia cited but one case, *Rhoads v. Board of Trustees*, 689 N.E.2d 266 (Ill. App. Ct. 1997), in support of this argument. However, *Rhoads* is distinguishable from the instant case and is against the greater weight of authority.

The *Rhoads* court held that a municipality's police pension board was not in privity with the municipality itself. *Id.* at 269-270. In *Rhoads*, a police officer injured his knee in two separate incidents while performing his duties as a police officer. In 1988, his knee was injured when his arm was trapped in the window of a car whose driver attempted to drive away to avoid being snared in a prostitution "sting," dragging Rhoads. In 1991, the same knee was again injured when a suspect kicked him. *Id.* at 268. Rhoads made worker's compensation and, when it became apparent that he would no longer be able to work as a police officer, duty-related disability pension claims. The municipality settled the worker's compensation claim. However, the pension board denied his duty-related disability pension application. *Id.*

Rhoads appealed this denial to a circuit court. He argued that the board should have awarded him full "duty-related" benefits because the worker's compensation settlement foreclosed any argument regarding whether his injuries were suffered in the line of duty. *Id.* The Illinois court held that because the defendant board was not in privity with the municipality, Rhoads could not avail himself of the benefits of issue preclusion stemming from the worker's compensation settlement in the pension board litigation. *Id.* at 270. The court reasoned that the board had not been consulted by the city during settlement negotiations, and that the two entities serve distinct constituencies with respect to incentives to settle or litigate. *Id.* Put simply, it would have been unfair to preclude the defendant board from litigating causation because the board's interests were not adequately protected in the settlement negotiations.

Unlike *Rhoads*, where a plaintiff attempted to use collateral estoppel *offensively*, based upon a settlement agreement, to the detriment of a defendant *not* party to the original action, here it is the defendants who seek to invoke res judicata *defensively*, based upon a final adjudi-

cation, against a plaintiff who *was* party to the original action. Our finding of privity between the Village and the Board *benefits* the Village, the party who was not literally present in the original litigation. And there is nothing to suggest that the Village would have made any arguments significantly different than those offered by the Board during the circuit court's consideration of Garcia's appeal. Furthermore, Garcia was himself a party in the original action, and we presume that his interests were vigorously advanced before the circuit court. Consequently, the fairness concerns underlying the *Rhoads* court's reasoning are not present here.

Furthermore, case law and common sense support a finding of privity between the Village and the Board. In effect, the Board is an agent of the Village, and the Village, therefore, is in privity with the Board. *See McKinney v. City of E. St. Louis*, 188 N.E.2d 341, 343 (Ill. App. Ct. 1963). The Village has delegated the functions of overseeing and administering the Fund to the Board, in that the Village created the Board, 40 Ill. Comp. Stat. 5/1-101, appoints two members of the Board, 40 Ill. Comp. Stat. 5/3-128, and is legally required to provide reserve capital for the Fund through taxation, 40 Ill. Comp. Stat. 5/3-127, 5/3-142.

Garcia argues that despite the agency relationship described above, because the Village was not a named party in his appeal to the circuit court, the Village is not in privity with the Board. "The law cannot tolerate such an absurdity." *McKinney*, 188 N.E.2d at 343, *quoted in Dempsey v. City of Harrisburg*, 279 N.E.2d 55, 57 (Ill. App. Ct. 1971).

> The correct rule is: when a judgment is rendered against an officer of a municipal corporation who sues or is sued in his official capacity, the judgment is binding upon the corporation, upon other officers of the

same municipal corporation who represent the same interest, and upon all residents and taxpayers thereof.

*Id.* (citing 38 Am. Jur. *Municipal Corporations* § 729). *See also Davis v. City of Chicago*, 53 F.3d 801, 803 (7th Cir. 1995) (holding that a purported distinction between the city's personnel board and the city itself is a "distinction without a difference. The Personnel Board is *part* of Chicago and acted on the City's behalf; it is not a separate legal entity.")). Because the Board is an agent of the Village, overseeing and administering the Fund on the Village's behalf, and because the Village would ultimately be responsible for judgments rendered against the Board, the Village is in privity with the Board.

Since Garcia raised no arguments regarding the privity of Steiner in his individual capacity with the Board,[7] we need not address that issue here. However, Garcia did dispute the privity of Steiner in his official capacity, albeit in a summary fashion. As a sergeant in the Village police and as a Board member, Steiner is an employee (or agent) of the Village and/or the Board. Hence, as a Village employee and agent, under the above analysis, his privity with the Board is established. Alternately, as a Board employee and agent, he is in privity with the Board. *See Davis*, 53 F.3d at 803-04 (citations omitted).

## 2. Same cause of action

Having determined that the first two elements of res judicata are met, all that remains is to assess whether

---

[7] Arguably, this issue was not addressed because following the district court's ruling pursuant to the *Rooker-Feldman* doctrine, Garcia voluntarily dismissed all the counts (V, VI, VIII) leveled against Steiner. (R. 35.) Regardless, we easily find privity between Steiner, at least in his official capacity, and the Board.

Garcia's administrative appeal of the Board's denial of his duty-related disability benefits comprises the same cause of action as his claims in this case. Until *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 891 (Ill. 1998), Illinois courts were free to utilize either the "same evidence" or "transactional" test for determining whether causes of action are the same for res judicata purposes. Under the "same evidence" test, a "second suit is barred 'if the evidence needed to sustain the second suit would have sustained the first, or if the same facts were essential to maintain both actions.'" *Id.* (quoting *Rodgers v. St. Mary's Hosp.*, 597 N.E.2d 616, 621 (Ill. 1992)). The outcome under this approach depends upon the relief requested by a plaintiff: two claims may be part of the same transaction, but nonetheless still be considered separate causes of action because the evidence needed to support each claim differs. *Id.* at 892. But under the less restrictive and more pragmatic transactional approach, "'the assertion of different kinds of theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief.'" *Id.* at 891 (quoting *Rodgers*, 597 N.E.2d at 621). Unlike the same evidence approach, this approach views claims in factual terms, focusing only on the bounds of the transaction at issue, disregarding the number of substantive theories, the variant forms of relief flowing from those theories, and the variations in evidence needed to support the theories. *Id.* at 892 (citing Restatement (Second) of Judgments § 24, cmt. a at 197 (1982)). In *River Park* the Illinois Supreme Court unequivocally and explicitly adopted the transactional approach, *id.* at 893 (stating "our approval of the transaction test necessitates a rejection of the same evidence test"), and copiously listed other courts similarly adopting the transactional test, *id.* at 893-94 (listing at least twenty-three cases) (citations omitted).

Therefore, Garcia's federal causes of action, including Title VII, § 1981, and § 1983 claims, will constitute the

same cause of action as his administrative appeal, if the claims "arise from the same group of operative facts . . . even if there is not a substantial overlap of evidence . . . ." *Id.* at 893 (citing Restatement (Second) of Judgments § 24, cmt. b at 199). An analysis of Garcia's EEOC filing and his district court complaint reveals that all the civil-rights claims arise from the same core of operative facts—the Board's decision to deny Garcia duty-related disability benefits. This is the exact same core of operative facts that gave rise to Garcia's appeal of the Board's denial to the Illinois circuit court.

As Garcia argues, it is true that his administrative appeal of the Board's decision looked only at whether the denial was against the manifest weight of the evidence, *see Koulegeorge v. State of Ill. Human Rights Comm'n*, 738 N.E.2d 172 (Ill. App. Ct. 2000), *appeal denied*, 744 N.E.2d 285, *cert. denied*, 534 U.S. 886 (adopting the manifest weight of the evidence standard of review), and arbitrary and capricious—a very narrow review of the decision's propriety. And Garcia's complaint in federal district court alleges that the Board's decision was improper because it was the product of illegal discrimination and retaliation, for which he should be compensated through an award of full duty-related disability benefits and damages. But regardless of what a court reviews the Board's decision for, both the administrative appeal and the instant lawsuit question the basis—either proper or improper—of the Board's denial of Garcia's disability benefits. The "core of operative facts" is identical for both causes of action: the acts of the Board and the Village Police Department leading up to and including the Board's decision to deny the benefits. Attempts to construe the causes of action in any other manner are futile.[8]

---

[8] Garcia attempts to argue that the "core of operative facts" for the circuit court's review of the Board's decision is primarily

(continued...)

Furthermore, the Appellant's own EEOC filing and district court complaint reveal this to be the case. In his EEOC filing, two basic allegations were made: (1) "the denial of full pension benefits was based on my national origin, Hispanic;" and (2) "I was denied full pension benefits . . . in retaliation for having testified favorably for the plaintiff in a national origin discrimination suit brought by another Hispanic officer against the Village of Mount Prospect." (R. 20-1 Ex. A.) The Appellant's allegations to the EEOC explicitly referenced national origin discrimination and retaliation *only* in the context of the Board's denial of his full benefits. This court's thorough review of the EEOC charge could not uncover any distinguishable allegation of workplace discrimination made without reference to the Board's decision.

Similarly, the allegations leveled in Garcia's district court complaint are framed solely in terms of the Board's denial of his disability benefit application. His recitation of facts, (R. 20-1 Ex. A at 3-7), and every claim, (R. 20-1 Ex. A at 7-21), focus entirely on the Board's denial. The complaint does

---

[8] (...continued)
the circumstances surrounding the heart attack, whereas the "core of operative facts" underlying the instant claims is the Board's decision-making process. (App. Br. at 26-27.) This is simply untrue. The "core of operative facts" underlying the *Board's* decision was indeed limited to the circumstances surrounding the heart attack. But, the adjudication which this court views as now having a preclusive effect is the *circuit court's* affirmance of the Board's decision, and not the Board's decision itself. And Garcia acknowledges, as our discussion of his EEOC and district court complaints demonstrates, *see infra*, that his instant claims relate directly (and solely) to the propriety of the Board's decision. Thus, as we previously stated, the circuit court's decision and the instant claims are based upon the same core of operative facts: the propriety of the Board's decision-making process.

not contain any factually supported allegations of workplace discrimination made outside of the context of the Board's actions.[9] The administrative appeal challenged the Board's decision, the motives behind which are the basis for instant lawsuit. In sum, as the EEOC charge and district court complaint make plain, the administrative appeal and the cause of action in federal court arise from the same core of operative facts. *See, e.g., Pirela*, 935 F.2d at 912-13.

## B. Full and fair opportunity to litigate

Having concluded that all three res judicata requirements under Illinois law are met, our remaining inquiry is whether Garcia had a full and fair opportunity to litigate his claims. As a corollary to the transactional rule, Illinois adopted the doctrine of merger and bar which precludes the sequential pursuit not only of claims actually litigated, but of those that could have been litigated. *Durgins*, 272 F.3d at 843 (citing *People ex rel. Burris v. Progressive Land Developers, Inc.*, 602 N.E.2d 820, 825 (Ill. 1992); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1234 (7th Cir. 1986 (summarizing Illinois law)); *see also River Park*, 703 N.E.2d at 895. Thus, so long as Garcia could have joined his federal

---

[9] Perhaps recognizing that such an allegation would be the only persuasive basis for his argument that the instant cause of action did not arise from the same operative facts as the administrative appeal, Garcia asserted in his brief to this court that, "[my] claims of retaliation and discrimination . . . [arose] . . . from the treatment [I] received while employed by the Village," (App. Br. at 27). Demonstrating the fallacy of this statement, Garcia conceded a mere three paragraphs later that "[i]t was only after all the hearings were over and after the Pension Board made its decision that [I] even became aware of [the discrimination and/or retaliation] claims." (App. Br. at 28.) His claims arose *not* from the general treatment he received as a Village police officer, but rather directly from the Board's decision.

claims with the administrative appeal of the Board's decision, then he had a full and fair opportunity to litigate those claims under Illinois law.

At first blush, this inquiry appears to be the most troublesome. This is due to conflicting Illinois case law regarding whether federal civil-rights claims may be joined as independent causes of action with administrative appeals heard by Illinois circuit courts prior to the exhaustion of Illinois' administrative process for the civil-rights claims, established under the Illinois Civil Rights Act of 1979 ("ICRA," "Illinois Human Rights Act," "IHRA," or "Act"), Pub. Act No. 81-1216, 1979; 775 Ill. Comp. Stat. 5/1-101—5/10-101 (2003). Ultimately, how the Illinois courts resolve this issue is immaterial to our inquiry here. The administrative process through which a federal civil-rights claim must traverse before a court can exercise jurisdiction does not negate a court's ability to *eventually* exercise that jurisdiction. Because Illinois circuit courts could have exercised jurisdiction over Garcia's federal civil-rights claims (either directly or after Garcia exhausted available administrative remedies), Garcia could have joined those civil-rights claims with his administrative appeal of the Board's decision. Consequently, he had a full and fair opportunity to litigate his civil-rights claims in the Illinois legal system.

We begin with the oft-acknowledged proposition that the states and the federal government share concurrent jurisdiction over Title VII, § 1981, and § 1983 claims. *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820 (1990); *Martinez v. California*, 444 U.S. 277, 283 n.7 (1980); *Pirela*, 935 F.2d at 913. Moreover, a state may limit, but not eliminate, the exercise of such jurisdiction in its own courts. *See Faulkner-King v. Wicks*, 590 N.E.2d 511, 518 (Ill. App. Ct. 1992), *quoted in Cooper v. Ill. State Univ.*, 772 N.E.2d 396, 399-400 (Ill. App. Ct. 2002).

In 1979 the Illinois legislature enacted the Illinois Civil Rights Act, *supra*. The Act seeks to "secure for all individuals within Illinois the freedom from discrimination because of race, color, religion, sex, national origin, ancestry, age, marital status, physical or mental handicap, or unfavorable discharge from military service . . . ." 775 Ill. Comp. Stat. 5/1-102(A) (1979). Furthermore, the Act established the Illinois Human Rights Commission ("IHRC"), an administrative body to adjudicate claims involving civil rights. 775 Ill. Comp. Stat. 5/8-101, *et seq.* (1979). Judicial review of the IHRC's final orders is also provided for in the Act, whereby either party to a dispute can exercise their right to review, so long as such requests are filed within thirty-five days of a final order. 775 Ill. Comp. Stat. 5/8-111(A)(1) (1979). Critically, the Act also limits the jurisdiction of Illinois courts, mandating that any party seeking to pursue a civil-rights claim in Illinois must first exhaust administrative remedies available under the Act (by filing a claim with the IHRC and proceeding with an IHRC investigation and adjudication), before appealing to an Illinois circuit court to hear the claim. 775 Ill. Comp. Stat. 5/8-111(C) (1979) ("Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act.").

A review of Illinois case law by this court reveals that since 1979, the application of 5/8-111(C), particularly the phrase "[e]xcept as otherwise provided by law," has been consistent for certain types of claims, but rather confusing for others.[10] Illinois courts, and hence, federal courts, con

---

[10] Neither Appellant nor the Appellees make any noticeable efforts to distinguish between these types of claims. Clearly, a case brought under Illinois law and involving civil rights will be subject to the Act and must be brought before the IHRC. *See Manley v.*

(continued...)

sistently find that cases based upon state common-law claims "inextricably linked" to civil-rights violations are subject to the Act and thus, Illinois circuit courts do not have original jurisdiction over such claims. The administrative process under the Act must be completed before a circuit court can exercise jurisdiction over these types of claims. *See, e.g., Quantock v. Shared Mktg. Servs., Inc.*, 312 F.3d 899, 905 (7th Cir. 2002); *Talley v. Wash. Inventory Serv.*, 37 F.3d 310 (7th Cir. 1994); *Nanda v. Bd. of Trustees*, 219 F. Supp. 2d 911, 916 (N.D. Ill. 2001); *Johnson v. Baxter Healthcare Corp.*, 907 F. Supp. 271 (N.D. Ill. 1995); *Geise v. Phoenix Co. of Chicago, Inc.*, 639 N.E.2d 1273 (Ill. 1994); *Welch v. Ill. Sup. Ct.*, 751 N.E.2d 1187 (Ill. App. Ct. 2001).

Similarly, cases based upon the Illinois Constitution or other Illinois statutes which are "inextricably linked" to civil-rights violations are subject to the Act and its jurisdictional limits. *See, e.g., Damato v. Phelan Chevrolet Geo, Inc.*, 927 F. Supp. 283 (N.D. Ill. 1996); *Baker v. Miller*, 636 N.E.2d 551 (Ill. App. Ct. 1994) *Faulkner-King v. Wicks*, 590 N.E.2d 511 (Ill. App. Ct. 1992) (alleged constitutional vio-

---

[10] (...continued)
*City of Chicago*, 236 F.3d 392, 397 (7th Cir. 2001). The copious citations in the Appellant's reply brief to cases which do *not* involve claims brought in Illinois courts under *federal* civil rights laws are both irrelevant and misleading. (App. Rep. Br. 3-5.)

Appellant also attempts to discredit cases, (App. Rep. Br. at 16-18), decided by this court and cited by the Appellees by stating, without supporting authority, that § 8-111(C) was not in effect at the time the cases were decided. However, a simple review of the legislative history of the ICRA reveals that § 8-111(C) has been in effect since the inception of the ICRA in 1979 and every case referred to by the Appellant as "not applicable" or "not controlling" was decided well after 1979.

lation does not confer concurrent jurisdiction between both the IHRC and an Illinois trial court).

Also, cases explicitly alleging civil-rights violations under Illinois law are subject to the Act. *See, e.g., Hicks v. Resolution Trust Corp.*, 738 F. Supp. 279 (N.D. Ill. 1990); *Mein v. Masonite Corp.*, 485 N.E.2d 312 (Ill. 1985); *Veazey v. LaSalle Telecomm., Inc.*, 779 N.E.2d 364 (Ill. App. Ct. 2002); *Lewis v. Collinsville Cmty. Unit Sch. Dist.*, 511 N.E.2d 899 (Ill. App. Ct. 1987); *Williams v. Naylor*, 497 N.E.2d 1274 (Ill. App. Ct. 1986).

However, where allegations of civil rights violations are framed only in terms of *federal* laws, such as the claims involved in this case, the Illinois courts have been much less clear. *Compare Stykel v. City of Freeport*, 742 N.E.2d 906, 914 (Ill. App. Ct. 2001) (determining that a trial court may consider federal civil-rights claims joined with an administrative review of a distinct claim before the circuit court);[11] *Stratton v. Wenona Cmty. Unit Dist. No. 1*, 551 N.E.2d 640 (Ill. 1990) (holding that § 1983 claims may be joined with an administrative review);[12] *with Faulkner-*

---

[11] Although the case does not specify, the trial court may have allowed the federal civil-rights claims to proceed because the party had exhausted all administrative remedies under applicable federal and state law.

[12] Appellant attempts to distinguish *Stratton* due to the basis for its administrative appeal, the writ of common law *certiorari*, (App. Rep. Br. 14-16), as opposed to the Illinois Administrative Review Law ("IARL"), 735 Ill. Comp. Stat. 5/3-110 (1998), applicable in the instant case. It is a distinction without difference. As *Stratton* explicitly stated, "[w]here a final administrative decision has been rendered . . . the circuit court may grant the relief which a party seeks [only] *within the context of reviewing that decision* . . . ." 551 N.E.2d at 645-46 (citing *Dubin v. Personnel Bd.*, 539 N.E.2d 1243, 1247 (Ill. 1989)). Likewise, under the IARL, a circuit
(continued...)

*King*, 590 N.E.2d at 517-18 (affirming Illinois trial court's dismissal based on lack of subject-matter jurisdiction over claims brought under U.S. Const. amend. XIV and 42 U.S.C. §§ 1983, 1985, 1986 (1988) because the claims are covered by the IHRA),  *cited in Cooper*, 772 N.E.2d at 399-400; *Brewer v. Bd. of Trustees*, 791 N.E.2d 657 (Ill. App. Ct. 2003) (expressly holding that Illinois circuit courts do *not* have original jurisdiction due to the IHRA exclusivity provision to hear claims of discrimination arising under federal statutes) (cert. petition pending); *Cahoon v. Alton Packaging Corp.*, 499 N.E.2d 522, 524 (Ill. App. Ct. 1986) (holding that a federal civil rights claim must be prosecuted under the same procedure applicable to a state civil-rights claim).

Garcia argues that since the greater weight of Illinois authority, *see supra*, holds that a circuit court cannot exercise original jurisdiction over federal civil-rights claims, he could not have joined his Title VII, § 1983, and § 1981 claims with his complaint for administrative review of the Board's denial of full duty-related benefits. But these cases stand for the proposition that Illinois circuit courts lack *original* jurisdiction over any claim involving civil rights.

---

[12] (...continued)
court sitting in an administrative review capacity may not consider any new or additional evidence—the court is limited to the record on appeal, 735 Ill. Comp. Stat. 5/3-110 (1998). *See Dubin*, 539 N.E.2d at 1246 ("The differences which once existed between the [IARL] and common-law methods of reviewing decisions of administrative agencies have been all but lost, and now the nature and extent of judicial review is virtually the same under both methods. The circuit courts, therefore, do not possess greater authority to review actions by agencies whose final decisions are reviewable through common-law methods than the courts have when statutory procedures apply.") (citation omitted).

Once a claimant exhausts administrative remedies under the ICRA, Illinois circuit courts may indeed exercise jurisdiction over an appeal from an IHRC's final order. Therefore, regarding whether or not Garcia had a full and fair opportunity to litigate his Title VII, § 1983, and § 1981 claims, it makes no difference whether Garcia could have directly joined these civil-rights claims with his administrative appeal of the Board's decision, or whether he would have had to initially file with the IHRC to exhaust all available state administrative remedies prior to the joinder. In either case, the Illinois circuit court would have had jurisdiction, sooner or later, to hear his civil-rights claims. Simply because federal civil-rights claims must be considered *first* by the IHRC (and the EEOC in the case of Title VII claims), does not mean that the circuit court cannot *eventually* exercise jurisdiction over those claims, once the administrative process is completed.

Our jurisprudence makes this clear. A potential civil-rights claimant has "a reasonable opportunity to bring . . . equal protection claim[s] before the circuit court because Illinois allows a plaintiff to join constitutional claims under § 1983 with a request for administrative review [of a separate claim]." *Manley*, 236 F.3d at 397 (explicitly holding that a police officer appealing a review board's termination decision to the circuit court could have joined §§ 1983 and 1985 claims, although ultimately affirming the district court's dismissal on *Rooker-Feldman* grounds). Many of our cases, some of which are listed here, considered whether civil-rights claims can be joined with administrative appeals of different claims to Illinois circuit courts and bear striking similarities to the instant case. In *Durgins*, 272 F.3d at 843-44, we held that a police officer appealing her discharge by the City's Board of Police and Fire Commissioners to an Illinois circuit court could have joined her constitutional claims under 42 U.S.C. § 1983. Likewise, in *Davis*, 53 F.3d at 802-03, we affirmed a district court's

dismissal of a § 1983 claim based upon res judicata when a refuse-collection coordinator appealing his discharge by the City Personnel Board to a circuit court failed to join his constitutional claims under § 1983. And finally, in *Pirela*, 935 F.3d at 913-14, we explicitly held that despite the IHRA's vesting of sole jurisdiction over civil-rights claims in the IHRC, according to *Board of Trustees v. Illinois Human Rights Commission*, 490 N.E.2d 232, 236 (Ill. App. 1986) (interpreting *Mein v. Masonite Corp.*, 485 N.E.2d 312 (Ill. 1985)), the Act only precludes *direct* access to the circuit courts, and hence, a police officer appealing his discharge by the Police and Fire Commissioners to an Illinois circuit court could not escape the res judicata effects of his failure to raise his discrimination claims either before the administrative body or the circuit court.

The practical difficulties of exhaustion will not prevent res judicata from applying. These issues are largely inconsequential to the our analysis because no matter how such complexities are sorted out, Garcia nevertheless would still have been able to join his civil-rights claims with his complaint for administrative review. For example, there may indeed be an exhaustion requirement under the IHRA in order to bring any federal civil-rights claims in Illinois circuit courts. And if so, in the case of Title VII claims, in order to preserve access to *both* the federal and state legal systems, a claimant must file his complaint with the IHRA.[13] But again, a circuit court would nonetheless

---

[13] Under the dual filing system, *see* 42 U.S.C. § 2000e-5(e)(1); (R. 20-1 Ex. A); *see, e.g.*, *Herrmann v. Cencom Cable Assocs, Inc.*, 999 F.2d 223, 224 (7th Cir. 1993) (where plaintiff "filed a charge of discrimination with the EEOC and its Illinois counterpart . . . ."), filing a Title VII-based civil-rights claim with the EEOC is also considered to be a filing with the corresponding state agency, and vice versa. Hence, after filing a charge with the IHRA (and also,

(continued...)

*eventually* be able to exercise jurisdiction once the state administrative process—and *ipso facto*, the federal administrative process—was completed.

We also note that Garcia was required to appeal the decision of the Board within thirty-five days of its decision. *See* 735 Ill. Comp. Stat. 5/3-103 (1998). Clearly, if Garcia had sought to exhaust his state and federal administrative remedies for his civil-rights claims prior to the filing of his complaint for administrative review of the Board's decision, he would have been pressed for time. In *Herrmann*, we addressed this timeliness problem.

> Ordinarily . . . the statutes of limitations governing the plaintiff's other claims will not be so short that he risks being barred from pursuing those claims by waiting to complete the Title VII administrative process. *If [a plaintiff] does face a looming deadline for suing on his other claims, he can ask the EEOC or its state counterpart to accelerate the administrative process; he will have good cause for doing so. . . . [The plaintiff] can sue on his other claims, ask the court—and again he would have a very strong case for doing so—to stay the proceedings, until the Title VII administrative process is complete . . . .* These possibilities make the danger that applying res judicata in Title VII suits will interfere with legislative design remote. Although it will mean additional delay in some cases, the plaintiff is protected, in part at least, against being harmed by delay by the fact that he will be accruing additional

_____

[13] (...continued)
effectively, with the EEOC), assuming the IHRC resolved the dispute in the employer's favor, a claimant would then have the option of either appealing the IHRC's denial of relief to an Illinois circuit court, *or*, after obtaining a right-to-sue letter from the EEOC, suing his employer in a federal district court.

> entitlements to back pay [or lost benefits] during this period, and will receive prejudgment interest on his award when and if he does prevail.

*Id.* at 225 (emphasis added). The IARL explicitly provides for a circuit court to stay the decision of the administrative agency for good cause.[14] 735 Ill. Comp. Stat. 5/3-111(a)(1) (1998). Consequently, Garcia could have petitioned the circuit court to stay the decision of the Board pending the conclusion of the civil-rights administrative proceedings. Had the circuit court denied his request, then res judicata would not now apply.

Garcia also incorrectly argues that because his federal civil-rights claims would have necessitated evidence outside of the administrative record (i.e., Garcia's testimony in the *Martinez* case, Garcia's conversations with Steiner), the limited scope of a circuit court's administrative review which prevents the consideration of such "new" evidence, 735 Ill. Comp. Stat. 5/3-110 (1998), would have prevented him from fully and fairly litigating his civil-rights claims. This contention is premised on the idea that somehow his administrative appeal of the Board's decision would sub-sume his civil-rights claims. But Title VII and §§ 1981 and 1983 claims are original actions independent of the administrative review proceeding and are therefore plenary in scope. *See Stykel*, 742 N.E.2d at 914; *Stratton*, 551 N.E.2d at 646 (holding that a § 1983 claim is an "independent, original action," rather than a review proceeding, even when it challenges an administrative action). Because a civil-rights claim under federal law is a distinct cause of action, the scope of administrative review with respect to the appeal of the Board's decision is irrelevant with respect

---

[14] Although this is not technically the same as the circuit court staying its own proceedings, it has the same effect. *See, e.g.*, *Dubin v. Personnel Bd.*, 539 N.E.2d 1243, 1246-47 (Ill. 1989).

to the circuit court's review of any newly joined civil-rights claims. *See Durgins*, 272 F.3d at 843 (acknowledging the limitations of administrative review, but noting that constitutional claims joined in such proceedings can be explored in discovery).

Moreover, Garcia *chose* to pursue an administrative appeal of the Board's decision to the circuit court. He could have foregone that appeal (thereby avoiding the aforementioned procedural complexities) and simply pursued his federal civil-rights claims solely in federal court (of course, after exhausting his Title VII administrative remedies with the EEOC). As Judge Easterbrook pointed out in *Davis*, a plaintiff is free to pursue his claims strategically, but he must abide by the consequences of those choices.

> [The plaintiff] split his claim for his own reasons: he wanted simple, streamlined litigation in the Circuit Court of Cook County so that he could get back pay as quickly as possible. His § 1983 claims against the [defendants] are more complicated and have lower stakes, so he wanted to postpone them. . . . That is an understandable strategy but not a good reason for foisting two suits on the judicial system and his adversary. Having made a tactical choice to expedite decision, [the plaintiff] must accept the consequences.

*Davis*, 53 F.3d at 803.

Because Illinois circuit courts could have exercised jurisdiction over Garcia's independent federal civil-rights claims either directly or after Garcia exhausted available administrative remedies, it was thus possible for Garcia to join those claims with his administrative appeal of the Board's decision. He had a full and fair opportunity to litigate his civil-rights claims and consequently, res judicata applies.

## III. Conclusion

For the foregoing reasons, the district court's dismissal is AFFIRMED on res judicata grounds.

A true Copy:

      Teste:

                      _____
                      *Clerk of the United States Court of*
                      *Appeals for the Seventh Circuit*