HAMILTON, Circuit Judge,
dissenting.
I respectfully dissent. When plaintiffs case was pending in the state courts, he did not have a full and fair opportunity to litigate his federal claims of race and national origin discrimination there. If he had tried to assert these claims along with his certiorari petition in the state courts in 2006, he would have run into two decades of solid appellate precedent holding that the state trial courts simply did not have jurisdiction over those federal claims. In *579 the face of those precedents, and with the federal courthouse doors then seemingly open to him, Dr. Dookeran took a reasonable path. He followed established law by waiting to pursue his federal claims in federal court. He should not be penalized by a claim preclusion bar for having done so. (Like the majority, I will refer to claim preclusion rather than res judicata.)
For purposes of our review of the district court’s dismissal of this action, we must assume on the merits that considerations of race and national origin did in fact influence the decision to terminate Dr. Dookeran’s employment. In deciding whether claim preclusion now bars Dr. Dookeran’s federal claims, the pivotal issue is whether he had “a full and fair opportunity to litigate” his claims of race and national origin discrimination in the state trial court that heard his common law certiorari challenge to his dismissal. See generally Kremer v. Chemical Construction Corp., 456 U.S. 461, 480-81, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (“[T]he judicially created doctrine of collateral estop-pel does not apply when the party against whom the earlier decision is asserted did not have a ‘full and fair opportunity’ to litigate the claim or issue.”), quoting Allen v. McCurry, 449 U.S. 90, 95, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), and Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found., 402 U.S. 313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); see also Garcia v. Village of Mount Prospect, 360 F.3d 630, 634 (7th Cir.2004) (federal court can deny claim preclusion if state courts denied parties a full and fair opportunity to litigate the matter).
More specifically, “claim preclusion generally does not apply where ‘[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy because of the limitations on the subject matter jurisdiction of the courts....’” Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 382, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), quoting Restatement (Second) of Judgments § 26(l)(c) (1982). Illinois courts apply this jurisdictional limit on claim preclusion. See River Park, Inc. v. City of Highland Park, 184 Ill.2d 290, 234 Ill.Dec. 783, 703 N.E.2d 883, 896 (1998), citing, e.g., Restatement § 26(1); Marrese v. American Academy of Orthopaedic Surgeons, 628 F.Supp. 918, 924 (N.D.Ill.1986) (after remand, applying jurisdictional limitation to find no claim preclusion). That rule applies directly here.
We must evaluate Dr. Dookeran’s opportunity to present his federal discrimination claims in the state courts at the time he might have tried do so, in 2006. That requires a brief tour through now-defunct Illinois case law. In 2006, Dr. Dookeran would have run into a solid wall of appellate precedent holding that Illinois trial courts had no jurisdiction over federal claims of discrimination. Those cases interpreted a provision of the Illinois Human Rights Act stating: “Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act.” 775 Ill. Comp. Stat. 5/8 — 111(D) (2008).[1]
The statutory term “civil rights violation” is defined in the Act: “ ‘Civil rights violation’ includes and shall be limited to only those specific acts set forth in Sections 2-102, 2-103, 2-105, 3-102, 3-102.1, *580 3-103, 3-104, 3-104.1, 3-105, 3-105.1, 4-102, 4-103, 5-102, 5A-102, 6-101, and 6-102 of this Act.” 775 Ill. Comp. Stat. 5/1-103(D). The referenced sections all deal with one form or another of discrimination. For our purposes, the most relevant is section 2-102, which prohibits “unlawful discrimination” in employment. “Unlawful discrimination” is in turn defined to mean discrimination on the basis of “race, color, religion, national origin, ancestry, age, sex, marital status, order of protection status, disability, military status, sexual orientation, or unfavorable discharge from military service as those terms are defined in this Section.” 775 Ill. Comp. Stat. 5/1— 103(Q).
The statutory language does not distinguish between those discrimination claims that arise under federal law and those that arise under state law. Accordingly, the Illinois Appellate Court held repeatedly that the jurisdictional bar was not limited to state law claims but also applied to federal discrimination claims. See Cahoon v. Alton Packaging Corp., 148 Ill.App.3d 480, 101 Ill.Dec. 934, 499 N.E.2d 522, 523 (1986) (“the plain language of Section 8-111(C) requires that an Illinois court dismiss [a federal age discrimination] case unless state administrative remedies have been exhausted”); Faulkner-King v. Wicks, 226 Ill.App.3d 962, 168 Ill.Dec. 874, 590 N.E.2d 511, 516 (1992) (Illinois Human Rights Act precluded state court jurisdiction over Title VII claims); Cooper v. Illinois State Univ., 331 Ill.App.3d 1094, 265 Ill.Dec. 358, 772 N.E.2d 396, 401 (2002) (dismissing plaintiffs ADEA and Title VII claims: “We adhere to Faulkner-King and Cahoon, and thus hold that in Illinois, the Act is the exclusive source of a remedy for employment-discrimination claims....”) (citations omitted); Brewer v. Bd. of Trustees of Univ. of Illinois, 339 Ill.App.3d 1074, 274 Ill.Dec. 565, 791 N.E.2d 657, 662 (2003) (in rejecting plaintiffs argument that IHRA § 8-111(0 did not preclude state court jurisdiction over Title VII and § 1983 claims: “we disagree with plaintiffs interpretation of section 8-lll(C). Neither Title VII nor section 1983 provides that plaintiffs may sue in state court.”); Meehan v. Illinois Power Co., 347 Ill.App.3d 761, 283 Ill.Dec. 589, 808 N.E.2d 555, 562 (2004) (“[FJederal claims of age discrimination are treated identically to state claims of age discrimination. The circuit courts of Illinois have no jurisdiction over claims of age discrimination in employment, whether based on federal law or state law.”).
To be sure, the Cahoon line of cases was deeply problematic. In terms of our federal system of government, it’s a problem when state courts of general jurisdiction refuse to exercise jurisdiction over a class of claims arising under federal law. E.g., Haywood v. Drown, 556 U.S. 729, 129 S.Ct. 2108, 173 L.Ed.2d 920 (2009) (state could not bar state trial court jurisdiction over category of federal claims under 42 U.S.C. § 1983). In more practical terms, the limit on state trial court jurisdiction meant that when plaintiffs asserted a variety of claims arising out of an adverse employment action, both employees and employers could face a bewildering maze of jurisdictional paths and roadblocks depending on whether claims were federal or state, statutory, constitutional, or common law.
Three years after Dr. Dookeran made his choice to follow the Cahoon line of cases and to wait to present his federal discrimination claims in federal court, the Illinois Supreme Court resolved some of those problems by overruling the Cahoon line of cases. Blount v. Stroud, 232 Ill.2d 302, 328 Ill.Dec. 239, 904 N.E.2d 1 (2009). In Blount, the state’s highest court concluded that the statutory term “civil rights violation” is limited to civil rights violations *581 arising under the enumerated sections of the state statute and does not include claims arising under federal law. Id., 328 Ill.Dec. 239, 904 N.E.2d at 16.
In concluding that Dr. Dookeran had a full and fair opportunity to bring his federal race and national origin discrimination claims in state court before Blount was decided, the majority reasons that Dr. Dookeran could have done what Ms. Blount did: raise her federal discrimination claims in state court and challenge the two decades of controlling precedent depriving Illinois state courts of jurisdiction over such claims. In my view, deeming that route a full and fair opportunity to litigate Dr. Dookeran’s claims in the state courts is simply not realistic.
At the relevant time, the state courts appeared to be closed to Dr. Dookeran’s federal claims, but the federal courts appeared to be open. Let’s suppose that back in 2006, Dr. Dookeran and his lawyer had studied the question and reached the conclusion that the Cahoon line of cases had consistently misread the statute. Dr. Dookeran and his lawyer still had no compelling reason to pick up that particular lance and attack that jurisdictional windmill when the federal courts would have been open to his claims. A litigant who simply wants to have his claims heard on the merits cannot be faulted, and certainly should not be penalized with claim preclusion, because he reasonably relied on well-established law and chose not to spend the time, energy, and money to fight the choice-of-forum issue all the way to the Illinois Supreme Court. From the perspective of a plaintiff who merely wants to be heard by a fair tribunal — any fair tribunal — there was no need to try to force the lock on the Illinois courthouse doors when the federal courthouse doors seemed to be open.
To avoid this reasoning, the majority also suggests that Illinois case law before Blount was actually split on whether “alleged civil rights violation[s]” under the Act included federal discrimination claims. Given the strength and specificity of the holdings in the Cahoon line of cases, I doubt that even some arguably conflicting authority should make a difference in deciding whether Dr. Dookeran had a full and fair opportunity to bring his federal discrimination claims in the state court. On closer examination, however, I submit there was no genuine conflict between the Cahoon line of cases and the cases cited by the majority, Stratton v. Wenona Community Unit Dist. No. 1, 133 Ill.2d 413, 141 Ill.Dec. 453, 551 N.E.2d 640, 646 (1990), and Stykel v. City of Freeport, 318 Ill.App.3d 839, 252 Ill.Dec. 368, 742 N.E.2d 906 (2001).
Recall that the Cahoon line of cases relied entirely on the statutory definition of “civil rights violation,” which was limited in relevant part to claims of unlawful discrimination. Neither Stratton nor Stykel involved a claim for discrimination. In Stratton, the Illinois Supreme Court held that a trial court reviewing an administrative decision to expel a student from a public school could take additional evidence and adjudicate a federal due process claim under 42 U.S.C. § 1983. In Stykel, the appellate court held that firefighter applicants who had scored zero on a qualifying examination could pursue federal constitutional civil rights claims in state court under section 1983. The court’s opinion, however, did not indicate any allegations of unlawful discrimination.
When one keeps in mind the Cahoon line’s focus on discrimination, the perceived conflict between those cases and Stratton and Stykel disappears. The Illinois courts generally observed this distinction, and Judge Kennelly explained it well *582 in Thompson v. Solo, No. 03-cv-8766, 2004 WL 2581092, *4 (N.D.Ill. Aug. 26, 2004) (holding that plaintiffs federal claim that was not a claim for discrimination was barred by claim preclusion, and distinguishing Cahoon line of cases on this basis).[2] Moreover, in Blount itself, the Illinois Supreme Court did not say it was resolving a conflict among appellate court decisions. It was simply overruling a consistent but erroneous line of authority. See Blount, 328 Ill.Dec. 239, 904 N.E.2d at 12-13, 15; see also Blount v. Stroud, 376 Ill.App.3d 935, 315 Ill.Dec. 562, 877 N.E.2d 49, 61 (2007) (stating, in opinion reversed by supreme court: “All of the courts in Illinois to have considered the issue have held that Illinois Circuit Courts lack the subject matter jurisdiction to adjudicate civil rights claims brought under state and federal law.”).
Thus, the idea that Dr. Dookeran could have brought his federal discrimination claims with his certiorari petition to Illinois state courts in 2006 is untenable. Before the Illinois Supreme Court’s decision in Blount, no litigant could reasonably have been expected to choose to attempt to invalidate the solid wall of precedent in the Cahoon line of cases over doing what Dr. Dookeran did here — bring his federal discrimination claims in federal court. For this reason, I do not believe that Dr. Dook-eran’s state court proceedings provided him with a full and fair opportunity to be heard on his federal discrimination claims.[3]
Although it is perhaps little consolation to Dr. Dookeran, I take some comfort from two points. First, at least at the time of oral argument, Dr. Dookeran’s discrimination claims under state law were still pending before the Illinois Human Rights Commission, which could yet give him an opportunity to be heard on the merits. Second, this case may be a case of nearly last impression. Recent changes in both Illinois case law and statutes offer hope for greater clarity in handling these cases that combine federal and state law on both discrimination and other types of claims. In the end, though, I cannot agree that Dr. Dookeran had a full and fair opportunity to have his claims heard in the Illinois trial court in 2006. I would reverse and remand for further proceedings on the merits of his federal discrimination claims.

. The language was earlier in section 5/8— 111(C), as indicated in some quotations below. At the time, the Act provided for judicial review of final agency actions before the Illinois Appellate Court.

. Our opinion in Garcia v. Village of Mount Prospect, 360 F.3d 630, 639-42 (7th Cir.2004), was issued before Blount and perceived the same tension seen by the majority today, but Garcia also failed to focus on the difference between discrimination claims and other types of claims. Garcia avoided resolving the issue by making a further mistake, concluding that a plaintiff with a federal discrimination claim could bring his claim to the Illinois Human Rights Commission and then seek judicial review in the Illinois circuit courts. Id. at 642. At that time, actions of the IHRC could be reviewed only in the Illinois Appellate Court, as the appellee admits here. See 775 Ill. Comp. Stat. 5/8-111(A)(1) (2007); Ap-pellee's Br. at 25. The Illinois Human Rights Act was amended effective in 2008, too late to help Dr. Dookeran or Mr. Garcia, to allow employees to choose between administrative adjudication before the IHRC and a circuit court. See 775 Ill. Comp. Stat. 5/7A-102(D)(3), (D)(4), and (G)(2) (2008), as amended by Public Act 95-243, § 5.

. I agree with the majority that subject matter jurisdiction is not precluded by the Rooker-Feldman doctrine and that claim preclusion would apply in similar cases brought after Blount was decided, as it unlocked the Illinois state courthouse doors for federal discrimination claims in those cases.