In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3197

KEITH DOOKERAN,

*Plaintiff-Appellant,*

*v.*

COUNTY OF COOK, ILLINOIS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 11 C 2802—**Joan B. Gottschall**, *Judge.*

ARGUED MARCH 28, 2012—DECIDED MAY 3, 2013

Before MANION, SYKES, and HAMILTON, *Circuit Judges*.

SYKES, *Circuit Judge.* Dr. Keith Dookeran was hired by John H. Stroger Hospital of Cook County in 2000 subject to biennial reappointment. In his 2004 application for reappointment, Dookeran disclosed for the first time that Mercy Hospital, his previous employer, had reprimanded him for creating a hostile work environment. This disclosure triggered an investigation and peer review by Stroger Hospital's medical staff. An admin-

istrative committee eventually revoked Dookeran's staff privileges, and the Cook County Board formally denied his reappointment application.

Dookeran sought judicial review by common-law writ of certiorari in Cook County Circuit Court. The circuit court ruled in his favor, but the Illinois Appellate Court reversed and reinstated the denial of reappointment, and the Illinois Supreme Court denied leave to appeal. While these proceedings were ongoing in the Illinois courts, Dookeran filed charges of employment discrimination with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC") alleging that his reapplication was denied based on his race and national origin and also in retaliation for an earlier charge he had filed with the EEOC. After a long delay, Dookeran received a right-to-sue letter from the EEOC and brought this suit in federal court against Cook County alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The County moved to dismiss for lack of jurisdiction under *Rooker-Feldman* and also on the basis of res judicata. The district court rejected the jurisdictional argument but dismissed Dookeran's claims as barred by res judicata.

We affirm. First, the *Rooker-Feldman* doctrine does not apply, so subject-matter jurisdiction is secure. Second, the district court correctly held that Dookeran's Title VII claims are precluded. There is no real dispute that the basic requirements of Illinois preclusion doctrine are met; the main point of contention is whether

Dookeran had a full and fair opportunity to litigate his federal claims in the state-court proceedings. We hold that he did. In *Blount v. Stroud*, 904 N.E.2d 1, 17-18 (Ill. 2009), the Illinois Supreme Court held that the state circuit courts have jurisdiction to hear federal civil-rights claims even though the Illinois Human Rights Commission ("IHRC") does not. Although some decisions from the Illinois Appellate Court had held otherwise, Dookeran was not prevented from bringing his Title VII claims with his certiorari petition in the circuit court to test whether this line of intermediate appellate authority was correct. The successful plaintiff in *Blount* did exactly that, and the state supreme court held that the appellate decisions had misread the statutory scheme. Accordingly, Dookeran could have joined his Title VII claims with the state-court certiorari proceeding. Because he did not, claim preclusion applies.

**I. Background**

Dr. Dookeran, a surgeon and surgical oncologist, was hired by Stroger Hospital in 2000 subject to biennial reappointment. In his 2004 application for renewal of his employment and hospital privileges, he disclosed for the first time that he had been reprimanded by Mercy Hospital, his previous employer. He certified on his earlier applications that he had not been reprimanded in the last four years, when in fact he had received a formal reprimand for creating a hostile work environment at Mercy. *See Dookeran v. County of Cook*, 920 N.E.2d 633, 637 (Ill. App. Ct. 2009). More particularly,

Dookeran was removed as director of surgical research and associate director of the general surgery residency program as a consequence of "unprofessional conduct toward Mercy Hospital employees." *Id.*

Dr. Howard Zaren, the department chair at Stroger Hospital, submitted the matter to the hospital's credentials committee, which initiated an elaborate internal review process to determine Dookeran's fitness for reappointment. The credentials committee investigated and recommended to the executive medical staff that Dookeran be denied reappointment. The executive medical staff did not issue an immediate ruling and referred the issue to the peer-review committee. That committee recommended a 29-day suspension of Dookeran's clinical privileges—a suspension of 30 or more days would have required the hospital to report the discipline to a national databank. The executive medical staff adopted the peer-review committee's suggestion, but increased the suspension to 30 days. Because the 30-day suspension triggered the reporting requirement, Dookeran was entitled to a hearing and appeal under Stroger Hospital's medical staff bylaws.

The five-member hearing committee determined that Dookeran had falsified his 2002 reappointment application. On the basis of this and other findings, the hearing committee recommended that Dookeran's staff membership be suspended or revoked. The executive medical staff continued to recommend a 30-day suspension, but the joint-conference committee voted to revoke Dookeran's staff membership instead. That recommenda-

tion was sent for final action to the Cook County Board, which formally denied Dookeran's application for reappointment on June 20, 2006.

Dookeran thereafter filed a petition for common-law certiorari in Cook County Circuit Court seeking review of the Board's decision. In Illinois judicial review of most administrative actions proceeds under the Administrative Review Law, 735 ILL. COMP. STAT. 5/3-101, but the common-law writ of certiorari remains available and serves the same function for judicial review of the agency decisions that fall outside the statute. *See Chi. Title Land Trust Co. v. Bd. of Trs.*, 878 N.E.2d 723, 727 (Ill. App. Ct. 2007). While the certiorari petition was pending in the circuit court, Dookeran filed a charge of discrimination with the IDHR and the EEOC alleging that his application for reappointment was denied because of his race (black) and national origin (Trinidadian). Dookeran also alleged that the hospital discharged him in retaliation for an EEOC charge he filed on June 27, 2005. At no time did Dookeran raise a claim of discrimination in the circuit court.

The circuit court concluded that the hearing committee's recommendation was not sufficiently supported by the record, vacated the denial of Dookeran's reappointment, and remanded for the hospital's hearing committee to reconsider and "to recommend a lesser sanction." *Dookeran*, 920 N.E.2d at 643. After additional proceedings, the circuit court modified the judgment, ordering the Board to suspend Dookeran's clinical privileges for 30 days. The Illinois Appellate Court reversed,

holding that the administrative decision was adequately supported by the evidence and reinstating the denial of reappointment. *Id.* at 650. The Illinois Supreme Court denied leave to appeal. *Dookeran v. County of Cook*, 930 N.E.2d 408, 408 (Ill. 2010).[1]

In January 2011, after the certiorari proceeding in the state courts concluded, the EEOC issued a right-to-sue letter. Dookeran then filed this suit against Cook County alleging claims under Title VII for discrimination and retaliation on the basis of race and national origin. The County moved to dismiss on two grounds: (1) lack of jurisdiction under *Rooker-Feldman*; and (2) res judicata. The district court held that the *Rooker-Feldman* doctrine did not deprive the court of subject-matter jurisdiction but dismissed the suit on the basis of res judicata. Dookeran timely appealed.

## II. Discussion

The primary issue on appeal is whether Dookeran's federal claims under Title VII are precluded because he

---

[1] In 2007 Dookeran sued Cook County in state court for breach of contract, retaliatory discharge, and defamation. His claims were dismissed on res judicata grounds, and he appealed. The Illinois Appellate Court recently affirmed, holding that res judicata barred the claims for breach of contract, and retaliatory discharge and truth provided a complete defense to the defamation claim. *See Dookeran v. County of Cook*, No. 1-11-1095, 2013 WL 1190285 (Ill. App. Ct. (1st) Mar. 22, 2013).

could have raised them in his state-court action.[2] But the threshold question is jurisdictional. The *Rooker-Feldman* doctrine[3] holds that the lower federal courts lack subject-matter jurisdiction over actions that seek review of state-court judgments; only the United States Supreme Court has authority to review state judgments. *See Skinner v. Switzer*, 131 S. Ct. 1289, 1297 (2011); *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 645 (7th Cir. 2011). *Rooker-Feldman* is a "narrow doctrine, 'confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603, (7th Cir. 2008) (quoting *Lance v. Dennis*, 546 U.S. 459, 464 (2006)). Stated differently, *Rooker-Feldman* is only concerned with "situations in which the state court's decision is the source of the harm that the federal suit is designed to redress." *Simmons v. Gillespie*, No. 12-3381, 2013 WL 1110872, at *2 (7th Cir. Mar. 19, 2013).

The *Rooker-Feldman* doctrine does not apply here. Dookeran's Title VII discrimination and retaliation claims do not seek redress for harm caused by the state-

---

[2] In their briefs the parties use the term res judicata, which can refer either to claim preclusion or issue preclusion. Claim preclusion is implicated here; to avoid confusion, we use the more precise term.

[3] *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

court judgment. It is true that the claims involve the same basic transaction that was at issue in the state-court action; the certiorari proceeding and the claims in this case arise from the denial of Dookeran's application for reappointment to the Stroger Hospital medical staff. As we will explain, that transactional identity has dispositive significance for preclusion analysis, but it does not bring the *Rooker-Feldman* doctrine into play. Dookeran's Title VII claims do not invite federal-court review and rejection of the judgment of the Illinois courts in the certiorari proceeding. Subject-matter jurisdiction is intact.

That brings us to the main event in this appeal, which is claim preclusion. The district court dismissed the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, so our review is de novo. *Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 620 (7th Cir. 2012). The preclusion rules of Illinois apply. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481-82 (1982) (the judicial acts, records, and proceedings of every state court are given the same full faith and credit in every court within the United States as they have in their own state courts, *see* 28 U.S.C. § 1738; as such, federal courts apply the preclusion doctrine of the state in which the prior judgment was entered).

Illinois claim-preclusion law has three basic requirements: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of the causes of action; and (3) an identity of parties or their privies. *Nowak v. St. Rita High Sch.*, 757 N.E.2d 471,

477 (Ill. 2001). The first and third elements are straight-forward and are satisfied here; Dookeran does not argue otherwise. As for the second element—whether there is an identity of the causes of action—Illinois has adopted the "transactional" analysis, which looks to see if the claims "'arise from a single group of operative facts, regardless of whether they assert different theories of relief.'" *Arlin-Golf, LLC v. Village of Arlington Heights,* 631 F.3d 818, 821 (7th Cir. 2011) (quoting *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 833, 893 (1998)). "[T]he transactional test permits claims to be considered part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction." *Id.* (quotation marks omitted). Again, Dookeran does not contest this part of the analysis. His Title VII claims arise from the same basic transaction as the state-court certiorari proceedings: the denial of his application for reappointment at Stroger Hospital.

The law of claim preclusion in Illinois includes the concept of merger and bar, which "precludes the sequential pursuit not only of claims actually litigated, but of those that could have been litigated." *Garcia v. Village of Mt. Prospect*, 360 F.3d 630, 639 (7th Cir. 2004) (applying Illinois law); *see also Durgins v. City of E. St. Louis*, 272 F.3d 841, 843 (7th Cir. 2001) (same); *City of Peoria v. Peoria City Lines, Inc.*, 182 N.E.2d 164, 167 (Ill. 1962) (claim preclusion bars all question decided in the prior litigation as well as "all questions which might properly have been litigated and determined"). This principle, however, is bounded by the Due Process Clause of the

Fourteenth Amendment, which overrides the otherwise preclusive effect of a prior judgment if the claimant did not have a "full and fair opportunity to litigate [his] claim" in the prior action. *Kremer*, 456 U.S. at 480 (internal quotation marks omitted).

We have previously held that a federal civil-rights claim may be joined with an action in Illinois circuit court seeking judicial review of a decision by an administrative agency, which provides the "full and fair opportunity to litigate" necessary for claim preclusion to apply. *Garcia*, 360 F.3d at 639-42; *see also Pirela v. Village of North Aurora,* 935 F.2d 909, 913-15 (7th Cir. 1991). Dookeran asks us to reconsider *Garcia.* He argues that before 2009, when the state supreme court decided *Blount*, federal employment-discrimination claims could not be brought in Illinois circuit courts.

This argument requires a close analysis of *Blount*, an important decision by the Illinois Supreme Court. *Blount* involved a suit alleging various causes of action for employment discrimination, including a claim of retaliation under 42 U.S.C. § 1981 and a common-law retaliatory-discharge claim. 904 N.E.2d at 4. The plaintiff won a large judgment in the circuit court, but the Illinois Appellate Court threw it out on jurisdictional grounds. *Id.* at 5. The appellate court held that the plaintiff's sole and exclusive redress was the administrative remedy provided by the Illinois Human Rights Act ("IHRA"), 775 ILL. COMP. STAT. 5/101 (2008), and therefore the circuit court lacked subject-matter jurisdiction over the § 1981 and state common-law claims, 904 N.E.2d at 6. The

court relied on the jurisdictional bar contained in section 8-111(D) of IHRA, which states: "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILL. COMP. STAT. 5/8-111(D).

The Illinois Supreme Court reversed. 904 N.E.2d at 18. The court separately addressed whether the jurisdiction-stripping provision in the IHRA barred the plaintiff's tort claim for retaliatory discharge and her claim under § 1981. Regarding the common-law claim, the court explained that the IHRA "provides an exclusive remedy for state 'civil rights violations,' as defined in the Act, but makes no mention of common law tort actions." *Id.* at 10. Invoking the principle that "'legislative intent to abrogate the common law must be clearly and plainly expressed,'" *id.* (quoting *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 24 (Ill. 1997)), the court held that the IHRA does not clearly express an intent to abolish common-law torts factually connected to retaliation, and therefore the "plaintiff's claim for retaliatory discharge was properly before the circuit court," *id.*

The court reached a similar conclusion regarding the § 1981 claim. The court explained that as used in the IHRA, the term "civil rights violation" has a specific and limited meaning. *Id.* at 16 (citing 775 ILL. COMP STAT. 5/1-103(D) (listing the state statutory provisions to which the term "civil rights violation" applies)). "[T]he administrative procedures contained in the Act, which govern the filing and disposition of alleged 'civil rights viola-

tions,' are applicable only to civil rights violations under the Act." *Id.* Civil-rights violations arising under federal law are not included in the statutory list, so the court held that the IHRA's administrative procedures—including the statutory provisions establishing the exclusive administrative remedy and the corresponding jurisdictional bar—do not apply to federal civil-rights claims. *Id.* at 17. In other words, because the IHRA's jurisdictional limit applies only to the civil-rights violations listed in the statutory definition—i.e., those arising under state law—the IHRA's jurisdictional bar "does not apply to civil rights violations defined by and arising under federal law, as those violations are outside the scope of the Act." *Id.*

Finally, the court explained that because the "[c]ircuit courts are courts of general jurisdiction," *id.* (citing *Steinbrecher v. Steinbrecher*, 759 N.E.2d 509, 515 n.3 (Ill. 2001)), they are "presumptively competent to adjudicate claims arising under the laws of the United States," *id.* (citing *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990)). Accordingly, the court held that the plaintiff "could properly pursue her rights and remedies under federal law in the circuit court." *Id.* at 18.

After *Blount* it is clear that a federal civil-rights claim may be brought in Illinois circuit court along with a related administrative-review action, and a party's failure to do so will therefore raise the potential for claim preclusion. Dookeran argues that before *Blount* the law was murky and in fact prohibited him from bringing his Title VII claims in the circuit court. This

overstates the matter. The state supreme court acknowledged in *Blount* that some appellate-court decisions had misread the IHRA as barring the circuit courts from hearing federal civil-rights claims, and particularly Title VII claims. *Id.* at 12-15 (citing *Cahoon v. Alton Packaging Corp.,* 499 N.E.2d 522 (Ill. App. Ct. 1986); *Faulkner-King v. Wicks*, 590 N.E.2d 511 (Ill. App. Ct. 1992); *Cooper v. Ill. State Univ.*, 772 N.E.2d 396 (Ill. App. Ct. 2002); *Brewer v. Bd. of Trs. of Univ. of Ill.*, 791 N.E.2d 657 (Ill. App. Ct. 2003); *Meehan v. Ill. Power Co.*, 808 N.E.2d 555 (Ill. App. Ct. 2004)). The court held, however, that these cases contradicted the clear language of IHRA. *Id.* at 15. The court did not view its holding, which overruled the *Cahoon* line of cases, as working a change in Illinois law; to the contrary, the court said the statute was "unambiguous" and the appellate court's interpretation of IHRA's jurisdictional provision was plainly mistaken. *Id.* (refusing to apply the doctrine of legislative acquiescence to the *Cahoon* interpretation of the IHRA's jurisdiction-stripping provision).

The upshot of *Blount* is that notwithstanding the contrary view expressed in several Illinois appellate-court decisions, the circuit courts in Illinois have jurisdiction to hear federal civil-rights claims—and this was so both before and after *Blount*. We acknowledged in *Garcia*, decided before *Blount,* that the Illinois appellate courts were in conflict on the question of whether federal civil-rights claims could be "joined as independent causes of action with administrative appeals heard by Illinois circuit courts prior to the exhaustion of Illinois' administrative process for the civil-rights claims."

360 F.3d at 639. We specifically noted that the *Cahoon* line of cases was contradicted by other Illinois appellate-court decisions, some of which allowed § 1983 claims to be joined as independent actions in the circuit court. *Id.* at 641 (citing *Stykel v. City of Freeport,* 742 N.E.2d 906, 914 (Ill. App. Ct. 2001); *Stratton v. Wenona Cmty. Unit Dist. No. 1,* 551 N.E.2d 640 (Ill. 1990)). The text of IHRA and the presumption of concurrent jurisdiction cast further doubt on the *Cahoon* line of cases even before they were explicitly overruled by *Blount*.

Thus, prior to *Blount* putative Title VII plaintiffs like Dookeran were not barred from presenting their claims to the Illinois circuit courts. The Illinois Supreme Court's analysis in *Blount* does not undermine our decision in *Garcia;* to the contrary, our holding that the Illinois circuit courts have jurisdiction over federal civil-rights claims correctly anticipated *Blount*. Accordingly, Dookeran had a full and fair opportunity to pursue his Title VII claims with his certiorari action in the circuit court.[4] To the extent the circuit court would

---

[4] A separate holding in *Blount,* not implicated here, may cast some doubt on one aspect of our caselaw. The Illinois Supreme Court held that federal civil-rights claims cannot be brought in the administrative forum provided in the IHRA, which applies only to state civil-rights violations. *Blount v. Stroud*, 904 N.E.2d 1, 15-17 (Ill. 2009). This holding calls into question a general suggestion, made or implied in our decisions in *Abner v. Illinois Department of Transportation*,

(continued...)

have refused to hear his claims based on the erroneous caselaw from the Illinois appellate courts, Dookeran's recourse was the same as in *Blount*—take an appeal and ask the Illinois Supreme Court for an authoritative interpretation of the IHRA's jurisdictional provision. Because Dookeran failed to raise his Title VII claims in his earlier state-court action, the district court properly dismissed them as barred by claim preclusion.

AFFIRMED.

---

[4]  (...continued)

674 F.3d 716, 721 (7th Cir. 2012); *Hayes v. City of Chicago*, 670 F.3d 810, 814 (7th Cir. 2012); and *Welch v. Johnson*, 907 F.2d 714, 723-24 (7th Cir. 1990), that a federal civil-rights claim may be raised as a defense in Illinois administrative proceedings. Nothing in *Blount* undermines the judgments in *Abner*, *Hayes*, and *Welch*, however. As we have explained, the Illinois circuit courts have jurisdiction to hear federal civil-rights claims even though the IHRC does not, *Blount*, 904 N.E.2d at 15-17, and they may do so in tandem with judicial-review proceedings brought pursuant to statute or common-law writ of certiorari, *see, e.g., Stratton v. Wenona Cmty. Unit Dist. No. 1*, 551 N.E.2d 640, 645-47 (Ill. 1990).

HAMILTON, *Circuit Judge*, dissenting.  I respectfully
dissent. When plaintiff's case was pending in the state
courts, he did not have a full and fair opportunity to
litigate his federal claims of race and national origin
discrimination there. If he had tried to assert these
claims along with his certiorari petition in the state
courts in 2006, he would have run into two decades of
solid appellate precedent holding that the state trial
courts simply did not have jurisdiction over those
federal claims. In the face of those precedents, and with
the federal courthouse doors then seemingly open to
him, Dr. Dookeran took a reasonable path. He followed
established law by waiting to pursue his federal claims
in federal court. He should not be penalized by a
claim preclusion bar for having done so. (Like the
majority, I will refer to claim preclusion rather than
res judicata.)

For purposes of our review of the district court's dis-
missal of this action, we must assume on the merits that
considerations of race and national origin did in fact
influence the decision to terminate Dr. Dookeran's em-
ployment. In deciding whether claim preclusion now
bars Dr. Dookeran's federal claims, the pivotal issue
is whether he had "a full and fair opportunity to liti-
gate" his claims of race and national origin discrimina-
tion in the state trial court that heard his common law
certiorari challenge to his dismissal. See generally
*Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 480-
81 (1982) ("[T]he judicially created doctrine of collateral
estoppel does not apply when the party against whom
the earlier decision is asserted did not have a 'full and

fair opportunity' to litigate the claim or issue."), quoting *Allen v. McCurry*, 449 U.S. 90, 95 (1980), *Montana v. United States*, 440 U.S. 147, 153 (1979), and *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 329 (1971); see also *Garcia v. Village of Mount Prospect*, 360 F.3d 630, 634 (7th Cir. 2004) (federal court can deny claim preclusion if state courts denied parties a full and fair opportunity to litigate the matter).

More specifically, "claim preclusion generally does not apply where '[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy because of the limitations on the subject matter jurisdiction of the courts . . . ." *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 382 (1985), quoting Restatement (Second) of Judgments § 26(1)(c) (1982). Illinois courts apply this jurisdictional limit on claim preclusion. See *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 896 (Ill. 1998), citing, *e.g.*, Restatement § 26(1); *Marrese v. American Acadamy of Orthopaedic Surgeons*, 628 F. Supp. 918, 924 (N.D. Ill. 1986) (after remand, applying jurisdictional limitation to find no claim preclusion). That rule applies directly here.

We must evaluate Dr. Dookeran's opportunity to present his federal discrimination claims in the state courts at the time he might have tried do so, in 2006. That requires a brief tour through now-defunct Illinois case law. In 2006, Dr. Dookeran would have run into a solid wall of appellate precedent holding that Illinois trial courts had no jurisdiction over federal claims of discrimination. Those cases interpreted a provision of

the Illinois Human Rights Act stating: "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 Ill. Comp. Stat. 5/8-111(D) (2008).[1]

The statutory term "civil rights violation" is defined in the Act: "'Civil rights violation' includes and shall be limited to only those specific acts set forth in Sections 2-102, 2-103, 2-105, 3-102, 3-102.1, 3-103, 3-104, 3-104.1, 3-105, 3-105.1, 4-102, 4-103, 5-102, 5A-102, 6-101, and 6-102 of this Act." 775 Ill. Comp. Stat. 5/1-103(D). The referenced sections all deal with one form or another of discrimination. For our purposes, the most relevant is section 2-102, which prohibits "unlawful discrimination" in employment. "Unlawful discrimination" is in turn defined to mean discrimination on the basis of "race, color, religion, national origin, ancestry, age, sex, marital status, order of protection status, disability, military status, sexual orientation, or unfavorable discharge from military service as those terms are defined in this Section." 775 Ill. Comp. Stat. 5/1-103(Q).

The statutory language does not distinguish between those discrimination claims that arise under federal law and those that arise under state law. Accordingly, the Illinois Appellate Court held repeatedly that

---

[1] The language was earlier in section 5/8-111(C), as indicated in some quotations below. At the time, the Act provided for judicial review of final agency actions before the Illinois Appellate Court.

the jurisdictional bar was not limited to state law claims but also applied to federal discrimination claims. See *Cahoon v. Alton Packaging Corp.*, 499 N.E.2d 522, 523 (Ill. App. 1986) ("the plain language of Section 8-111(C) requires that an Illinois court dismiss [a federal age discrimination] case unless state administrative remedies have been exhausted"); *Faulkner-King v. Wicks*, 590 N.E.2d 511, 516 (Ill. App. 1992) (Illinois Human Rights Act precluded state court jurisdiction over Title VII claims); *Cooper v. Illinois State Univ.*, 772 N.E.2d 396, 401 (Ill. App. 2002) (dismissing plaintiff's ADEA and Title VII claims: "We adhere to *Faulkner-King* and *Cahoon*, and thus hold that in Illinois, the Act is the exclusive source of a remedy for employment-discrimination claims. . . .") (citations omitted); *Brewer v. Bd. of Trustees of Univ. of Illinois*, 791 N.E.2d 657, 662 (Ill. App. 2003) (in rejecting plaintiff's argument that IHRA § 8-111(C) did not preclude state court jurisdiction over Title VII and § 1983 claims: "we disagree with plaintiff's interpretation of section 8-111(C). Neither Title VII nor section 1983 provides that plaintiffs may sue in state court."); *Meehan v. Illinois Power Co.*, 808 N.E.2d 555, 562 (Ill. App. 2004) ("[F]ederal claims of age discrimination are treated identically to state claims of age discrimination. The circuit courts of Illinois have no jurisdiction over claims of age discrimination in employment, whether based on federal law or state law.").

To be sure, the *Cahoon* line of cases was deeply problematic. In terms of our federal system of government, it's a problem when state courts of general jurisdiction refuse to exercise jurisdiction over a class of claims

arising under federal law. *E.g.*, *Haywood v. Drown*, 556 U.S. 729 (2009) (state could not bar state trial court jurisdiction over category of federal claims under 42 U.S.C. § 1983). In more practical terms, the limit on state trial court jurisdiction meant that when plaintiffs asserted a variety of claims arising out of an adverse employment action, both employees and employers could face a bewildering maze of jurisdictional paths and roadblocks depending on whether claims were federal or state, statutory, constitutional, or common law.

Three years after Dr. Dookeran made his choice to follow the *Cahoon* line of cases and to wait to present his federal discrimination claims in federal court, the Illinois Supreme Court resolved some of those problems by overruling the *Cahoon* line of cases. *Blount v. Stroud*, 904 N.E.2d 1 (Ill. 2009). In *Blount*, the state's highest court concluded that the statutory term "civil rights violation" is limited to civil rights violations arising under the enumerated sections of the state statute and does not include claims arising under federal law. *Id.* at 16.

In concluding that Dr. Dookeran had a full and fair opportunity to bring his federal race and national origin discrimination claims in state court before *Blount* was decided, the majority reasons that Dr. Dookeran could have done what Ms. Blount did: raise her federal discrimination claims in state court and challenge the two decades of controlling precedent depriving Illinois state courts of jurisdiction over such claims. In my view, deeming that route a full and fair opportunity to litigate Dr. Dookeran's claims in the state courts is simply not realistic.

At the relevant time, the state courts appeared to be closed to Dr. Dookeran's federal claims, but the federal courts appeared to be open. Let's suppose that back in 2006, Dr. Dookeran and his lawyer had studied the question and reached the conclusion that the *Cahoon* line of cases had consistently misread the statute. Dr. Dookeran and his lawyer still had no compelling reason to pick up that particular lance and attack that jurisdictional windmill when the federal courts would have been open to his claims. A litigant who simply wants to have his claims heard on the merits cannot be faulted, and certainly should not be penalized with claim preclusion, because he reasonably relied on well-established law and chose not to spend the time, energy, and money to fight the choice-of-forum issue all the way to the Illinois Supreme Court. From the perspective of a plaintiff who merely wants to be heard by a fair tribunal — any fair tribunal — there was no need to try to force the lock on the Illinois courthouse doors when the federal courthouse doors seemed to be open.

To avoid this reasoning, the majority also suggests that Illinois case law before *Blount* was actually split on whether "alleged civil rights violation[s]" under the Act included federal discrimination claims. Given the strength and specificity of the holdings in the *Cahoon* line of cases, I doubt that even some arguably conflicting authority should make a difference in deciding whether Dr. Dookeran had a full and fair opportunity to bring his federal discrimination claims in the state court. On closer examination, however, I submit there was no

genuine conflict between the *Cahoon* line of cases and the cases cited by the majority, *Stratton v. Wenona Community Unit Dist. No. 1*, 551 N.E.2d 640, 646 (Ill. 1990), and *Stykel v. City of Freeport*, 742 N.E.2d 906 (Ill. App. 2001).

Recall that the *Cahoon* line of cases relied entirely on the statutory definition of "civil rights violation," which was limited in relevant part to claims of unlawful *discrimination*. Neither *Stratton* nor *Stykel* involved a claim for discrimination. In *Stratton*, the Illinois Supreme Court held that a trial court reviewing an administrative decision to expel a student from a public school could take additional evidence and adjudicate a federal due process claim under 42 U.S.C. § 1983. In *Stykel*, the appellate court held that firefighter applicants who had scored zero on a qualifying examination could pursue federal constitutional civil rights claims in state court under section 1983. The court's opinion, however, did not indicate any allegations of unlawful *discrimination*.

When one keeps in mind the *Cahoon* line's focus on discrimination, the perceived conflict between those cases and *Stratton* and *Stykel* disappears. The Illinois courts generally observed this distinction, and Judge Kennelly explained it well in *Thompson v. Solo*, No. 03-cv-8766, 2004 WL 2581092, *4 (N.D. Ill. Aug. 26, 2004) (holding that plaintiff's federal claim that was not a claim for discrimination was barred by claim preclusion,

and distinguishing *Cahoon* line of cases on this basis).[2] Moreover, in *Blount* itself, the Illinois Supreme Court did not say it was resolving a conflict among appellate court decisions. It was simply overruling a consistent but erroneous line of authority. See *Blount*, 904 N.E.2d at 12-13, 15; see also *Blount v. Stroud*, 877 N.E.2d 49, 61 (Ill. App. 2007) (stating, in opinion reversed by supreme court: "All of the courts in Illinois to have considered the issue have held that Illinois Circuit Courts lack the subject matter jurisdiction to adjudicate civil rights claims brought under state and federal law.").

Thus, the idea that Dr. Dookeran could have brought his federal discrimination claims with his certiorari

---

[2] Our opinion in *Garcia v. Village of Mount Prospect*, 360 F.3d 630, 639-42 (7th Cir. 2004), was issued before *Blount* and perceived the same tension seen by the majority today, but *Garcia* also failed to focus on the difference between discrimination claims and other types of claims. *Garcia* avoided resolving the issue by making a further mistake, concluding that a plaintiff with a federal discrimination claim could bring his claim to the Illinois Human Rights Commission and then seek judicial review in the Illinois circuit courts. *Id.* at 642. At that time, actions of the IHRC could be reviewed only in the Illinois Appellate Court, as the appellee admits here. See 775 Ill. Comp. Stat. 5/8-111(A)(1) (2007); Appellee's Br. at 25. The Illinois Human Rights Act was amended effective in 2008, too late to help Dr. Dookeran or Mr. Garcia, to allow employees to choose between administrative adjudication before the IHRC and a circuit court. See 775 Ill. Comp. Stat. 5/7A-102(D)(3), (D)(4), and (G)(2) (2008), as amended by Public Act 95-243, § 5.

petition to Illinois state courts in 2006 is untenable. Before the Illinois Supreme Court's decision in *Blount*, no litigant could reasonably have been expected to choose to attempt to invalidate the solid wall of precedent in the *Cahoon* line of cases over doing what Dr. Dookeran did here — bring his federal discrimination claims in federal court. For this reason, I do not believe that Dr. Dookeran's state court proceedings provided him with a full and fair opportunity to be heard on his federal discrimination claims.[3]

Although it is perhaps little consolation to Dr. Dookeran, I take some comfort from two points. First, at least at the time of oral argument, Dr. Dookeran's discrimination claims under state law were still pending before the Illinois Human Rights Commission, which could yet give him an opportunity to be heard on the merits. Second, this case may be a case of nearly last impression. Recent changes in both Illinois case law and statutes offer hope for greater clarity in handling these cases that combine federal and state law on both discrimination and other types of claims. In the end, though, I cannot agree that Dr. Dookeran had a full and fair opportunity to have his claims heard in the Illinois trial court in 2006. I would reverse and

---

[3] I agree with the majority that subject matter jurisdiction is not precluded by the *Rooker-Feldman* doctrine and that claim preclusion would apply in similar cases brought after *Blount* was decided, as it unlocked the Illinois state courthouse doors for federal discrimination claims in those cases.

remand for further proceedings on the merits of his federal discrimination claims.